36 A.3d 1082

JIM SCHEIDT, PLAINTIFF–APPELLANT, v. DRS TECHNOLOGIES, INC., IRA ALBOM, CHARLES G. BOYD, DONALD C. FRASER, WILLIAM F. HEITMANN, STEVEN S. HONIGMAN, C. SHELTON JAMES, MARK N. KAPLAN, MARK S. NEWMAN, STUART F. PLATT, DENNIS J. REIMER, ERIC J. ROSEN, AND NINA L. DUNN, DEFENDANTS–RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued October 25, 2011—Decided February 27, 2012.

190

Before Judges PAYNE, REISNER and HAYDEN.

*Martin N. Buchanan* (*Robbins Umeda L.L.P* ) of the California bar, admitted pro hac vice, argued the cause for appellant (*Carella, Byrne, Cecchi, Olstein, Brody & Angello, P.C.*, and *Mr. Buchanan*, attorneys; *Lindsey H. Taylor* and *James E. Cecchi*, on the briefs).

*J. Michael Riordan* argued the cause for respondents (*McElroy, Deutsch, Mulvaney & Carpenter, L.L.P*, attorneys; *Edward P. Welch* (*Skadden, Arps, Slate, Meagher & Flom, L.L.P.*) of the Delaware bar, admitted pro hac vice, *Jennifer C. Voss* (*Skadden Arps Slate, Meagher & Flom, L.L.P.*) of the Delaware bar, admitted pro hac vice, and *Mr. Riordan*, of counsel and on the brief).

The opinion of the court was delivered by

PAYNE, P.J.A.D.

In May 2008, plaintiff, Jim Scheidt, a shareholder in defendant, DRS Technologies, Inc., an American defense contractor, filed a direct action against the company, its Board of Directors [1] and its

---

[1] The Board was comprised of defendants Ira Albom, Charles G. Boyd, Donald C. Fraser, William F. Heitmann, Steven S. Honigman, C. Shelton James, Mark N. Kaplan, Mark S. Newman, Stuart F. Platt, Dennis J. Reimer and Eric J. Rosen. Newman was the only officer-director of DRS. The remainder of the Board was independent.

General Counsel [2] alleging that each engaged in self-dealing and breached applicable fiduciary duties by entering into an agreement and plan of merger with the Italian defense contractor Finmeccanica, SpA. On January 12, 2010, after shareholder approval of the merger, the granting of all regulatory approvals, and consummation of the transaction, the court dismissed plaintiff's amended complaint pursuant to *Rule* 4:6–2(e). Plaintiff has appealed, and we affirm.

I.

Our review of a dismissal of a complaint for failure to state a claim upon which relief can be granted is conducted de novo, following the same standard employed by the trial court. *Donato v. Moldow*, 374 *N.J.Super.* 475, 483, 865 *A.*2d 711 (App.Div.2005). We therefore consider, and accept as true, the facts alleged in the complaint in order to ascertain whether they set forth a claim against the corporate and individual defendants. *Ibid.* Nonetheless, we recognize that, in conducting our review, the essential facts supporting plaintiff's cause of action must be presented in order for the claim to survive; conclusory allegations are insufficient in that regard. *Printing Mart–Morristown v. Sharp Elec. Corp.*, 116 *N.J.* 739, 768, 563 *A.*2d 31 (1989).

In a "summary of the action" preceding the allegations of his amended complaint, plaintiff states that he

seeks to hold defendants and certain DRS officers accountable for: (a) their exclusive pursuit of the Finmeccanica deal, and related personal benefits, in furtherance of their own interests and at the expense of DRS shareholders' rights and interests; (b) their failures to adequately and properly explore, analyze, and evaluate alternatives to the Finmeccanica deal; (c) their knowing participation in a scheme to deprive DRS shareholders of the benefit of pursuing other higher-value offers; (d) misleading proxy statements and other communications made and unlawful steps taken to solicit and otherwise facilitate and secure DRS shareholder approval of the transaction; and (e) benefits obtained by defendants in violation of certain fiduciary duties to DRS shareholders.

---

[2] Nina L. Dunn. Ms. Dunn also served as the company's Executive Vice President and Secretary.

Plaintiff claims that defendants violated their fiduciary duties of loyalty, diligence, candor and good faith in failing to take steps to ensure that they had obtained the best value reasonably available for DRS shareholders. Additionally, plaintiff alleges that certain defendants aided and abetted those breaches.

Plaintiff supports his position with the following allegations. Beginning in June 2007, defendant Mark S. Newman, DRS's Chief Executive Officer (CEO), President and Chairman of the Board, engaged in discussions regarding joint potential business opportunities with Pier Francesco Guarguaglini, Chairman and CEO of Finmeccanica, including the possibility of a "combination transaction." On June 27, 2007, Guarguaglini sent Newman a letter indicating his interest in continuing those discussions. On October 16, 2007, Finmeccanica's counsel telephoned defendant Nina L. Dunn, DRS's General Counsel, to follow up on that expression of interest, and in a meeting later that month, Finmeccanica's counsel requested a meeting between senior management of the two companies. Such meetings between Guarguaglini, his consultant, Newman, and Dunn occurred in December and January 2008.

On January 30, 2008, Finmeccanica signed a nondisclosure agreement so as to enable it to review nonpublic information furnished by DRS. In early February 2008, DRS retained Skadden, Arps, Slate, Meagher & Flom L.L.P. as its legal advisor in connection with any proposed transaction with Finmeccanica. At the time, defendant Mark N. Kaplan, a Board member, served "Of Counsel" to the law firm.

On February 7, 2008, after a presentation by defendant Newman, the Board discussed Finmeccanica's acquisition interest and authorized Newman to continue discussions regarding the terms of a potential proposal by it. In February and March, Newman and Dunn proceeded to meet and discuss with senior representatives of Finmeccanica DRS's "expectations in connection with price and terms."

On March 6, 2008, Newman received a letter from another foreign corporation in the industry, designated by plaintiff as

"Company X," expressing an interest in a business combination with DRS. Defendants failed to explore Company X's interest at that time.

On March 18, 2008, DRS received a nonbinding indication of interest from Finmeccanica to purchase all outstanding shares of DRS common stock for $75 in cash per share. Upon receipt of the offer, and without exploring Company X's interest, Newman sought the authorization of the Board to proceed to a definitive merger agreement. On March 24, 2008, the Board authorized Newman to conduct detailed discussions with Finmeccanica. On March 25, 2008, DRS retained Bear, Stearns & Co., Inc. to act as financial advisor to it in connection with any transaction with Finmeccanica. Later, it also retained Merrill, Lynch, Pierce, Fenner & Smith, Inc. to also act as a financial advisor and to provide a fairness opinion to the Board in connection with the proposed transaction.

During March and April 2008, DRS assembled nonpublic information about the company's business operations and prospects, as well as its current and projected financial condition, and it made that information available to Finmeccanica. Additionally, meetings occurred between the senior management of both companies to discuss DRS's business, operations, plans, budgets, and forecasts, and to answer questions occasioned by Finmeccanica's due diligence investigation.

On April 17, 2008, Finmeccanica's counsel delivered a draft merger agreement between a Finmeccanica subsidiary and DRS. In the next few weeks, DRS and its advisors exchanged drafts of the merger agreement and engaged in discussions with Finmeccanica and its advisors regarding proposed terms.

On May 7, 2008, before an agreement was reached, DRS received a letter from a United States corporation in the industry, designated "Company Y," expressing an interest in a business combination. DRS did not explore that interest, and DRS's proxy statement allegedly contained no reasonable basis for the Board's decision not to pursue that business opportunity.

On May 8, 2008, DRS issued a press release stating that it was engaged in discussions contemplating a potential strategic transaction. On the following day, Company X reiterated its interest in a business combination with DRS, proposing a potential cash payment of $85 per share or higher.

On May 10, 2008, Newman updated the Board on the status of the discussions with Finmeccanica and on the second letter from Company X. Also, at that meeting, the Board reviewed the proposed terms of a post-acquisition employment agreement between Finmeccanica and Newman. During the May 10 meeting, the Board discussed "(i) the price per share referenced by Company X; (ii) the lack of information in the letter as to financing plans and conditions generally; (iii) the risk that Company X might lower the price offered upon completion of due diligence (even though Finmeccanica agreed to increase its bid based on its own due diligence); (iv) the relative risks associated with obtaining governmental approvals in connection with a transaction with Company X, as compared to a transaction with Finmeccanica, and the lack of specific information in the May 9 letter as to how Company X would propose to operate the Company after completion of a merger to address FOCI [3] concerns; and (v) the uncertainty of the decision-making process within Company X and the fact that Company X itself described its proposal as preliminary."

The Board asked Bear Sterns and Merrill Lynch to communicate with Company X's financial advisor about the terms and conditions of its proposal, its ability to consummate a transaction, and its ability to proceed promptly. Company X's financial advisors told Bear Sterns and Merrill Lynch that Company X only needed a few weeks to finalize its due diligence in order to be in a position to deliver a definitive proposal.

However, Company X was not afforded the same opportunity that had been afforded to Finmeccanica to review DRS's nonpublic information. Instead, the Board authorized Newman to finalize

---

[3] Foreign Ownership, Control, or Influence.

the terms of the merger agreement with Finmeccanica. In that connection, Newman negotiated an increase in consideration for the merger to $81 per share.[4] Additionally, Newman negotiated a reduction in the termination fee from $150 to $90 million, an extension of the outside date for closing to January 31, 2009 if all conditions had been satisfied or waived except for CFIUS[5] approval, and Finmeccanica's agreement to place operations representing up to 35% of DRS's revenues under a proxy agreement, if required by the Department of Defense as a condition to consummation of the merger.[6]

On May 12, 2008, the Board approved the merger agreement with Finmeccanica. The merger was approved by DRS's shareholders at a special meeting held on September 25, 2008, and the deal was closed in October 2008 after the necessary regulatory approvals were obtained.

It is against this background that we consider the propriety, under Delaware law, of the court's order dismissing plaintiff's amended complaint.

## II.

Plaintiff's amended complaint alleges breach by the Board of DRS of their fiduciary duties of due care, loyalty, good faith, and candor. Specifically, it alleges that the Board was motivated to approve the merger by its members' own self-interest; it agreed to unreasonable deal protection provisions; it failed to maximize shareholder value by declining to pursue alternative merger pro-

---

[4] According to DRS's proxy statement, DRS's stock was trading on the New York Stock Exchange on March 17, 2008, the day before Finmeccanica's March 18 proposal, at $55.70 per share. Its stock was trading at $63.74 on May 7, 2008, the last trading day before stories about the potential transaction between DRS and Finmeccanica were published.

[5] Committee on Foreign Investment in the United States.

[6] The merger agreement contained, in addition to a termination fee provision, a non-solicitation provision and a fiduciary out.

posals; and it issued misleading proxy statements in order to obtain shareholder approval of the merger with Finmeccanica.

Because this case involves a sale of control of DRS, we evaluate these allegations under standards established in *Revlon, Inc. v. MacAndrews & Forbes Holdings, Inc.*, 506 A.2d 173, 182 (Del. 1986).[7] The Delaware Supreme Court has explained those standards in *Paramount Communications Inc. v. QVC Network, Inc.*, 637 A.2d 34 (Del.1994), stating:

> The consequences of a sale of control impose special obligations on the directors of a corporation. In particular, they have the obligation of acting reasonably to seek the transaction offering the best value reasonably available to the stockholders. The courts will apply enhanced scrutiny to ensure that the directors have acted reasonably.... The directors' fiduciary duties in a sale of control context are those which generally attach. In short, "the directors must act in accordance with their fundamental duties of care and loyalty." *Barkan v. Amsted Indus., Inc.*, 567 A.2d 1279, 1286 (1989).
>
> [*Paramount, supra*, 637 A.2d at 43 (footnote omitted).]

Describing enhanced scrutiny, the Court held:

> The key features of an enhanced scrutiny test are: (a) a judicial determination regarding the adequacy of the decisionmaking process employed by the directors, including the information on which the directors based their decision; and (b) a judicial examination of the reasonableness of the directors' action in light of the circumstances then existing. The directors have the burden of proving that they were adequately informed and acted reasonably.
>
> [*Id.* at 45.]

However, the Court cautioned:

> Although an enhanced scrutiny test involves a review of the reasonableness of the substantive merits of a board's actions, a court should not ignore the complexity of the directors' task in a sale of control. There are many business and financial considerations implicated in investigating and selecting the best value reasonably available. The board of directors is the corporate decisionmaking body best equipped to make these judgments. Accordingly, a court applying enhanced judicial scrutiny should be deciding whether the directors made **a reasonable**

---

[7] We do not find the enhanced scrutiny required by *Unocal Corp. v. Mesa Petroleum Co.*, 493 A.2d 946, 954 (Del.1985), to be applicable here because DRS did not adopt defensive mechanisms in response to a specific threat, but rather, to ward off possible future advances by other interested companies. *See Moran v. Household Int'l, Inc.*, 500 A.2d 1346, 1350 (Del.1985) (holding that a preplanned defensive mechanism should be evaluated under the business judgment rule).

decision, not a perfect decision. If a board selected one of several reasonable alternatives, a court should not second-guess that choice even though it might have decided otherwise or subsequent events may have cast doubt on the board's determination. Thus, courts will not substitute their business judgment for that of the directors, but will determine if the directors' decision was, on balance, within a range of reasonableness.

[*Ibid.* (footnote omitted).]

"*Revlon* neither creates a new type of fiduciary duty in the sale-of-control context nor alters the nature of the fiduciary duties that generally apply." *Malpiede v. Townson,* 780 *A.*2d 1075, 1083 (Del.2001). Rather, *Revlon* defines the object of the Board's efforts: to maximize the sale price of the business. *Ibid.* In that regard, Delaware's courts have recognized that there is "no single blueprint" that directors must follow to fulfill their *Revlon* obligation. *Barkan v. Amsted Indus., Inc.,* 567 *A.*2d 1279, 1286–87 (Del.1989). Significantly, the *Malpiede* Court has noted that "[a]lthough the *Revlon* doctrine imposes enhanced judicial scrutiny of certain transactions involving a sale of control, it does not eliminate the requirement that plaintiffs plead sufficient facts to support the underlying claims for a breach of fiduciary duties in conducting the sale." 780 *A.*2d at 1083–84 (footnote omitted).

## A. *Duty of Due Care*

■ Plaintiff's claim of liability premised upon defendants' breach of their duty of due care fails as a matter of law. 8 *Del. C.* § 102(b)(7) provides, with respect to the contents of a certificate of incorporation of a Delaware company, in pertinent part:

[T]he certificate of incorporation may also contain . . .

(7) A provision eliminating or limiting the personal liability of a director to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director, provided that such provision shall not eliminate or limit the liability of a director: (i) For any breach of the director's duty of loyalty to the corporation or its stockholders; (ii) for acts or omissions not in good faith or which involve intentional misconduct or a knowing violation of law; (iii) under § 174 [8] of this title;

---

[8] "Liability of directors for unlawful payment of dividend or unlawful stock purchase or redemption. . . ."

or (iv) for any transaction from which the director derived an improper personal benefit. . . .

It is undisputed that DRS's certificate of incorporation contained a § 102(b)(7) exculpatory clause that protected its directors from personal monetary liability for any breaches of their duty of care. Thus, because no liability can be imposed on them for breach of that duty, plaintiff has failed to state a valid claim in that regard. *Lyondell Chem. Co. v. Ryan,* 970 *A.2d* 235, 239 (Del.2009) (recognizing the effect of § 102(b)(7) in an action challenging a corporate merger); *Malpiede, supra,* 780 *A.2d* at 1089–92 (affirming dismissal of claims premised upon breach of the duty of care as the result of the effect of § 102(b)(7), when the certificate of incorporation was mentioned in defendants' brief and its authenticity was not questioned). Accordingly, the motion judge properly dismissed plaintiff's claims of liability based on allegations of the directors' breach of a duty of care.

B. *Duty of Loyalty and Good Faith*

■ We additionally agree with the motion judge that plaintiff failed to plead sufficient, non-conclusory allegations to state a valid claim for breach of the fiduciary duty of loyalty and good faith.[9]

"The classic example that implicates the duty of loyalty is when a fiduciary either appears on both sides of a transaction or receives a personal benefit not shared by all shareholders." *In re Walt Disney Co. Derivative Litig.,* 907 *A.2d* 693, 751 (Del.Ch.2005) (citing *Cede & Co. v. Technicolor, Inc.* 634 *A.2d* 345, 362 (Del.1993)

---

[9] The duty of good faith is not considered an independent duty under Delaware law the breach of which can directly result in the imposition of fiduciary liability. *Stone v. Ritter,* 911 *A.2d* 362, 369 (Del.2006). "The failure to act in good faith may result in liability because the requirement to act in good faith 'is a subsidiary element[,]' i.e., a condition 'of the fundamental duty of loyalty.' " *Id.* at 369–70 (quoting *Guttman v. Huang,* 823 *A.2d* 492, 506 n. 34 (Del.Ch.2003)). "A director cannot act loyally toward the corporation unless she acts in the good faith belief that her actions are in the corporation's best interest. For this reason, the same case that invented the so-called 'trial[]' of fiduciary duty, *see Cede & Co. v. Technicolor, Inc.,* 634 *A.2d* 345, 361 (Del.1993) (*"Cede II "*), also defined good faith as loyalty." *Guttman, supra,* 823 *A.2d* at 506 n. 34.

(citing *Nixon v. Blackwell*, 626 A.2d 1366, 1375 (Del.1993))), *aff'd, sub nom, Brehm v. Eisner (In re Walt Disney Co. Derivative Litig.)*, 906 A.2d 27 (Del.2006). Similarly, evidence that the directors failed to act in good faith, intentionally failing to act in the face of a known duty to act and demonstrating a conscious disregard for their duties, will support a claim of breach of the duty of loyalty. *Brehm, supra*, 906 A.2d at 67.

In his amended complaint, plaintiff makes conclusory allegations that, as the result of Newman's long tenure at DRS, the Board was under his control, and thus was not independent. Additionally, plaintiff alleges that the Board put its self-interest ahead of the shareholders to secure post-merger positions on the new entity's board of directors and additional benefits not shared by the shareholders. Plaintiff alleges that, in order to retain their positions after a merger, the Board deliberately sought a foreign buyer that would need to retain American management. With knowledge that Finmeccanica needed to retain DRS management in order to clear regulatory hurdles, defendants "negotiated exclusively with Finmeccanica and structured a deal that furthered their own interests at the expense of DRS shareholders' interests." The proposed merger, it was claimed, would ensure that both directors and key members of management retained their positions after the merger. And finally, all of defendants' stock options would immediately vest upon consummation of the merger. We find plaintiff's allegations insufficient to state a claim upon which relief can be granted.

Plaintiff has claimed that the Board was under the control of Newman. However, that bare allegation, unsupported by fact, is insufficient. *Aronson v. Lewis*, 473 A.2d 805, 815 (Del.1984) ("There must be coupled with the allegation of control such facts as would demonstrate that through personal or other relationships the directors are beholden to the controlling person."), *overruled on other grounds, see Brehm, supra*, 746 A.2d at 253; *see also Kaplan v. Centex Corp.*, 284 A.2d 119, 122 (Del.Ch.1971) ("A plaintiff who alleges domination of a board of directors and/or

control of its affairs must prove it."). That the directors may have relied upon or on occasion deferred to Newman is not sufficient to establish domination, particularly because such evidence can be viewed equally as an appropriate exercise of business judgment by Board members.

■ Plaintiff's claims of self-interest or directorial entrenchment are similarly unavailing. "A successful claim of entrenchment requires plaintiff[ ] to prove that the defendant directors engaged in action which had the effect of protecting their tenure and that the action was motivated *primarily or solely* for the purpose of achieving that effect." *Benihana of Tokyo, Inc. v. Benihana, Inc.*, 891 *A.*2d 150, 186 (Del.Ch.2005), *aff'd*, 906 *A.*2d 114 (Del.2006).

In the present case, there are no facts alleged to suggest an improper motive on the directors' part. Further, if we accept as true the proposition that Finmeccanica needed to retain American management to clear regulatory hurdles,[10] that same proposition would apply to Company X—another foreign company and the only other company that articulated a potential offer for DRS. Thus, the directors would not have been differently situated, under plaintiff's postulated facts, if Company X's offer had been consummated. Further, under Delaware law, the retention by directors of their positions on a board does not, without more, provide evidence of a disqualifying interest that could support a claim of the directors' breach of their duty of loyalty. *Krim v. ProNet, Inc.*, 744 *A.*2d 523, 528 and n. 16 (Del.Ch.1999). Similarly, the vesting of options does not create a conflict with sharehold-

---

[10] Documents submitted by plaintiff suggest this proposition is not correct. *See* Department of Defense, *National Industrial Security Program Operating Manual*, § 2–305b (DoD 5220.22–M February 28, 2006) ("Individuals who serve as ... Outside Directors must be: ... b. Except as approved by the CSA in advance and in writing, completely disinterested individuals with no prior involvement with the company, the entities with which it is affiliated, or the foreign owner ...."), also available at http://www.fas.org/sgp/library/nispom/ 5220_22m2.pdf.

ers, since their interests are aligned in seeking to maximize their monetary recovery from the transaction. *Ibid.* As to any other benefits, plaintiff has not alleged that such benefits were not legitimate corporate obligations, or that the directors would not have received those benefits if DRS had merged with a company other than Finmeccanica.

In addition to his general allegations regarding the Board, plaintiff alleges that Newman, the CEO of DRS and the only director who was also an officer of the company, had a conflict of interest in connection with the transaction, since he would benefit as the result of his employment contract with the new entity. Plaintiff also notes that Kaplan, a director of DRS, also served in an "Of Counsel" capacity at Skadden Arps, the firm providing legal advice with respect to the merger, and as a result, he had a conflict of interest in connection with the transaction. But even if we were to assume that these two directors were conflicted, no conflict exists with respect to a majority of the eleven-member Board which, as we have demonstrated, remained disinterested and independent of any influence by Newman. Facts to support a claim that the Board was motivated by self-interest or ill will have not been set forth.

We similarly find that plaintiff has failed to offer facts to support a claim that the directors breached their duty of loyalty by failing to act in good faith. As the Delaware Supreme Court recently held in *Lyondell:*

[B]ad faith will be found if a "fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties." ... But, as noted, there are no legally prescribed steps that directors must follow to satisfy their *Revlon* duties. Thus, the directors' failure to take any specific steps during the sale process could not have demonstrated a conscious disregard of their duties. More importantly, there is a vast difference between an inadequate or flawed effort to carry out fiduciary duties and a conscious disregard for those duties.

Directors' decisions must be reasonable, not perfect. "In the transactional context, [an] extreme set of facts [is] required to sustain a disloyalty claim premised on the notion that disinterested directors were intentionally disregarding their duties." ... [I]f the directors failed to do all that they should have under the circumstances, they breached their duty of care. Only if they knowingly and

completely failed to undertake their responsibilities would they breach their duty of loyalty.

[*Lyondell, supra,* 970 A.2d at 243–44 (footnotes, containing citations, omitted).]

Thus, the issue before us in determining whether plaintiff alleged facts that would support his claim that the directors breached their duty of loyalty is whether he set forth facts that would establish that the "directors utterly failed to attempt to obtain the best sale price." *Id.* at 244 (footnote omitted).

Here, as the motion judge found, the allegations of the complaint do not support such a claim. The Board retained Skadden Arps to provide legal advice regarding the merger transaction. It retained Bear Sterns and Merrill Lynch to provide advice with respect to the financial aspects of the transaction and to prepare fairness opinions. It directed its financial advisors to investigate the offer tentatively made by Company X, and it considered those advisors' opinions as to whether that opportunity should be pursued before determining to proceed with final negotiations with Finmeccanica. Additionally, it utilized the tentative offer of Company X to obtain from Finmeccanica a more favorable price and better terms. As a consequence, the complaint does not support the claim that the directors breached their duty of loyalty as that duty has been defined by the Delaware Supreme Court in *Lyondell.*

C. *Duty of Disclosure*

■ Plaintiff has also alleged that defendants breached their duty of disclosure or candor in connection with the Finmeccanica cash merger transaction. We find that claim to be likewise unsupported by non-conclusory factual statements.

■ "[D]irectors of Delaware corporations are under a fiduciary duty to disclose fully and fairly all material information within the board's control when it seeks shareholder action." *Stroud v. Grace,* 606 A.2d 75, 84 (Del.1992). That duty "attaches to proxy statements and any other disclosures in contemplation of stockholder action." *Arnold v. Soc'y for Sav. Bancorp, Inc.,* 650

A.2d 1270, 1277 (Del.1994) (citing *Stroud, supra,* 606 A.2d at 85; *Blasius Indus. v. Atlas Corp.,* 564 A.2d 651, 659 n. 2 (Del.Ch. 1988)), *aff'd and remanded,* 678 A.2d 533 (Del.1996).

"The essential inquiry is whether the alleged omission or misrepresentation is material." *Arnold, supra,* 650 A.2d at 1277. A "board's fiduciary duty of disclosure, like the board's duties under *Revlon* and its progeny, are not independent duties but the application in a specific context of the board's fiduciary duties of care, good faith, and loyalty." *Malpiede, supra,* 780 A.2d at 1086 (footnote omitted). *See also Cinerama, Inc. v. Technicolor, Inc.,* 663 A.2d 1156, 1163 (Del.1995) ("A combination of the fiduciary duties of care and loyalty gives rise to the requirement that 'a director disclose to shareholders all material facts bearing upon a merger vote ....' ").[11] For an omitted fact to be found material, " '[t]here must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.' " *Malpiede, supra,* 780 A.2d at 1086 (quoting *Arnold, supra,* 650 A.2d at 1277).

In his complaint, plaintiff alleges: (1) the proxy failed to disclose any reasonable basis for the Board's conclusion that the merger was in the best interest of DRS shareholders, since the Board never bothered to explore or pursue interests of any companies other than Finmeccanica; (2) the proxy failed to disclose the nature and extent of the non-public information shared by DRS with Finmeccanica, and there are no disclosures concerning the impact of having no access to such information on the ability of other companies to make solid, informed competitive proposals; (3) the proxy discloses no reasonable basis for defendants' failure to pursue and explore Company Y's interest in buying DRS; (4) the proxy discloses no reasonable basis for defendants' decision to avoid negotiations with Company X, especially in light of the potential offer of $85 per share; and (5) the proxy discloses no

---

[11] The complex subsequent history of this case has been omitted as not relevant to the present discussion.

reasonable basis for defendants' failure and refusal to pursue and adequately explore the interests expressed by Company X and Company Y, or for their decision to approve the deal with Finmeccanica.

In essence, what plaintiff alleges under the guise of a failure to disclose is that DRS did not adequately pursue alternatives to Finmeccanica when determining to enter into the merger agreement with it. However, plaintiff's allegations reflect his value judgment that the Board failed to properly carried out its *Revlon* duties; the allegations do not reveal a failure to disclose. An examination of the amended proxy [12] shows that the shareholders were informed of the competing proposal by Company X and the overture by Company Y, as well as the extent of the Board's investigation into those companies' proposals. Additionally, the proxy set forth the reasons why the Board recommended that DRS shareholders vote to approve the proposed merger. Thus, the shareholders were furnished with the information necessary to make an independent determination as to whether the Board's efforts to obtain the highest value reasonably obtainable for DRS were adequate and whether the merger with Finmeccanica was in the shareholders' best interests. No material information was omitted in that regard.

Additionally, we note the disclosure in the proxy statement of the relationship of Kaplan to Skadden Arps; the proposed employment agreement between Newman and Finmeccanica; that company's intent to retain DRS management following the merger; the payment of compensation and certain benefits to upper management, as well as the negotiation of new employment agreements; and the vesting of stock options held by directors. We thus conclude that plaintiff has failed to sufficiently plead a valid

---

[12] Contrary to plaintiff's position, a court may consider the plain terms of documents to which reference is made in the complaint, particularly when the document at issue is selectively quoted. *In re Santa Fe Pacific Corp. S'holder Litig.*, 669 A.2d 59, 69–70 (Del.1995); *Abraham v. Emerson Radio Corp.*, 901 A.2d 751, 758 (Del.Ch.2006).

claim for breach by defendants of their fiduciary duties of due care, loyalty, good faith, and candor, and for that reason, the trial court, applying *Revlon's* enhanced scrutiny, properly dismissed plaintiff's claim.

### III.

Plaintiff next contends that the court erred in dismissing his claim against Newman and Dunn based upon their breach, as officers, of their fiduciary duty of care. He argues that, as DRS officers, "Newman and Dunn may not be exculpated from liability for any duty breaches under § 102(b)(7)," and therefore, they may be held liable for breaching their fiduciary duties. In that regard, plaintiff alleges that the two officers sought and ultimately secured a deal that furthered their own interests, and that they breached alleged independent *Revlon* duties to secure the best reasonable price for DRS.

Plaintiff is correct that 8 *Del. C.* § 102(b)(7), when incorporated into a corporation's charter, does not exculpate corporate officers performing in that capacity. *Gantler v. Stephens,* 965 A.2d 695, 709 n. 37 (Del.2009). However, our review of the complaint leads us to conclude that plaintiff failed to plead facts that could result in a judgment against Newman and Dunn as officers of DRS.

We find particularly significant in this regard the absence of any facts that would suggest that Newman and Dunn had independent authority, apart from the limited authority granted by the Board, to negotiate with any entity with the purpose of consummating a business merger on behalf of DRS. *Compare Brehm, supra,* 906 A.2d at 68–70 (Del.2006) (determining that Michael Eisner, as CEO, had concurrent authority to terminate Michael Ovitz as President of the Walt Disney Company without Board approval as the result of the Court's construction of the company's certificate of incorporation and by-laws); *see also* Marc I. Steinberg and Matthew D. Bivona, *Disney Goes Goofy: Agency, Delegation, and Corporate Governance,* 60 *Hastings L.J.* 210, 214–21 (2008) (discussing express and implied delegation of powers by directors to officers and observing that, although the president of a corpora-

tion is empowered to transact, without special Board authorization, all acts of an ordinary nature that are incident to the office, "acts that are extraordinary in nature are outside the bounds of an executive's inherent authority."); *Joseph Greenspon's Sons Iron & Steel Co. v. Pecos Valley Gas Co.*, 156 A. 350 (Del.Super.1931) (discussing delegation by implication of certain powers to certain officers, but holding "beyond the carrying out of the usual and proper functions of the corporation necessary for the proper and convenient management of the business of the corporation, the President remains as any other Director of the company, and other and further powers must be specifically conferred").

The amended complaint sets forth properly supported allegations with respect to the Board's directives to Newman and Dunn not to pursue negotiations with Company Y, the pursuit of limited negotiations with Company X and the consummation of negotiations with Finmeccanica. The amended complaint contains no properly supported allegations that either Newman or Dunn imperfectly performed their delegated duties in that regard.[13] And, further, there is no support for the claim that, because DRS's officers simultaneously negotiated employment contracts with Finmeccanica, they somehow failed to advance the interests of DRS, particularly since the amended proxy statement makes it clear that the existence of the negotiations and the details of the contracts were disclosed to the Board. Thus, we agree with the motion judge that plaintiff failed to properly allege a factual foundation for his claim of breach of fiduciary duty by Newman in his capacity as CEO of DRS or by Dunn.

## IV.

As a final matter, we affirm the dismissal of plaintiff's claims against Newman and Dunn for aiding and abetting viola-

---

[13] As corporate officers, Newman and Dunn had no independent *Revlon* duties. *In re Lukens, Inc. S'holders Litig.*, 757 A.2d 720, 731 (Del.Ch.1999), *aff'd, sub nom., Walker v. Lukens, Inc.*, 757 A.2d 1278 (Del.2000); *see also Barkan, supra*, 567 A.2d at 1286.

tions by the Board of its duty of care, and that DRS itself should be recognized as an aider and abettor, since the actions of the officer defendants can be imputed to it. To establish grounds for liability for aiding and abetting in this context, plaintiff was required to allege "(1) the existence of a fiduciary relationship, (2) a breach of the fiduciary's duty and (3) a knowing participation in that breach by the defendants who are not fiduciaries." *Weinberger v. Rio Grande Indus., Inc.*, 519 A.2d 116, 131 (Del.Ch.1986) (citing *Gilbert v. El Paso Co.*, 490 A.2d 1050, 1057 (Del.Ch.1984)); *see also Jackson Nat'l Life Ins. Co. v. Kennedy* 741 A.2d 377, 386 (Del.Ch.1999); *Santa Fe Pac. Corp. S'holder Litig., supra,* 669 A.2d at 72. Knowing participation in the breach by a non-fiduciary defendant has not been alleged in this case, and for that reason, neither Newman nor Dunn can be held liable for aiding and abetting. Plaintiff's claim against DRS, which plaintiff claims derives from the liability of Newman and Dunn, must be dismissed as well. Further, the corporation cannot be held liable for any fiduciary breaches on the part of its directors, because the directors do not act as agents for the corporation, but rather as fiduciaries for the shareholders. *Arnold, supra,* 678 A.2d at 539–40.

## V.

Plaintiff has additionally claimed that the motion court erred by holding that he could not seek a monetary judgment in the Chancery Division. He argues as well that the court abused its discretion in declining to consider the merits of his motion to compel production of documents. We find neither argument of sufficient merit in the present context to warrant discussion in a written opinion. *R.* 2:11–3(e)(1)(E).

Affirmed.