**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0127-20

STEPHANIE C. HUNNELL,

      Plaintiff-Respondent,

v.

ALIDA MCKEON,

      Defendant-Appellant.

_____

Submitted February 2, 2022 – Decided August 11, 2022

Before Judges Gilson, Gooden Brown, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-4179-19.

Lora B. Glick, attorney for appellant.

Hunnell Law Group, LLC, attorneys for respondent (Caitlin E. Holland, on the brief).

PER CURIAM

    Plaintiff Stephanie Hunnell, a licensed attorney, represented defendant

Alida McKeon in divorce proceedings which resulted in McKeon receiving a

$630,000 settlement in 2008 as her share of equitable distribution. However, McKeon's ex-husband failed to comply with the settlement terms, and McKeon never received the full settlement amount despite Hunnell filing numerous post-judgment enforcement motions on her behalf. Ultimately, the legal representation ended, although the parties dispute the termination date.

Thereafter, Hunnell obtained a $55,352 award from the District Fee Arbitration Committee (Fee Committee) for past due legal fees owed by McKeon. McKeon never appealed the award. When McKeon failed to pay, on November 25, 2019, Hunnell filed a verified complaint in the Law Division pursuant to Rule 4:67-1(a) seeking a judgment. In response, McKeon filed a contesting answer, including affirmative defenses, and a counterclaim alleging legal malpractice and other claims. When Hunnell moved to dismiss the counterclaim pursuant to Rule 4:6-2(e), McKeon opposed the motion and cross-moved to amend her counterclaim to add a legal malpractice claim based on fraudulent billing and stay the arbitration award pending the outcome of her malpractice countersuit.

In two separate orders filed on July 31, 2020, the trial court granted Hunnell's Rule 4:6-2(e) motion, dismissed McKeon's counterclaim in its entirety with prejudice, entered judgment, and denied McKeon's cross-motions to stay

2

the arbitration award and amend her counterclaim. McKeon now appeals from the July 31, 2020 orders.[1] For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings.

First, we address the dismissal of McKeon's counterclaim. Because this appeal comes to us on a <u>Rule</u> 4:6-2(e) motion to dismiss, we accept the facts alleged in the counterclaim as true, affording defendant "'every reasonable inference of fact.'" <u>Green v. Morgan Props.</u>, 215 N.J. 431, 452 (2013) (quoting <u>Printing Mart-Morristown v. Sharp Elecs. Corp.</u>, 116 N.J. 739, 746 (1989)). Thus, we begin with a summary of the facts pled in the counterclaim.

According to the counterclaim, the divorce was finalized in 2008 with the entry of an amended judgment of divorce that provided McKeon with a $630,000 settlement representing her share of the marital assets, to be paid in part from the proceeds of the sale of certain properties owned by McKeon and her ex-husband. Among the properties identified in the divorce judgment were two rental properties in Garfield. Under the terms of the settlement, McKeon's ex-husband was responsible for preparing the Garfield properties for sale and the properties were to be listed for sale no later than December 15, 2008.

---

[1] An amended order correcting clerical errors was entered on August 25, 2020.

However, as of 2010, the properties remained unsold.  Between 2009 and 2011, Hunnell filed four enforcement motions on McKeon's behalf to address McKeon's ex-husband's recalcitrant conduct, all to no avail.  The last motion was adjudicated by way of an order dated February 7, 2012.  On March 15, 2012, Hunnell emailed McKeon to explain that she would file an appeal of the February 7, 2012 order to address equitable distribution payments as soon as she returned from vacation.  However, Hunnell never filed the appeal.

The counterclaim makes no mention of any further interaction between the parties between March 2012 and December 2013.  According to the counterclaim, the next interaction occurred on December 27, 2013, when Hunnell had "a telephone status conference" with McKeon and McKeon's second husband and attorney-in-fact, John Conroy.  McKeon was "a senior citizen, who had been adjudicated totally disabled since 1994."  Because McKeon "ha[d] been suffering from numerous health problems" since 2013, she appointed Conroy "as her authorized legal representative."

At the end of the December 27, 2013 telephone status conference, Hunnell stated that she would "get back to [McKeon] in a couple of weeks."  However, that telephone meeting was the last time Hunnell spoke to McKeon.  In December 2014, McKeon emailed Hunnell to discuss her case and clarify

4

whether Hunnell was still representing her. The email mentioned that the Garfield properties, which were still unsold, had fallen into disrepair and suggested McKeon's ex-husband had intentionally vandalized the properties. In the email, McKeon also acknowledged receiving a letter and invoice for outstanding legal fees from Hunnell "in the spring of 2014" and insisted she had made repeated attempts to contact Hunnell since then.

Hunnell's letter, which was dated April 22, 2014, and attached to the motion to dismiss as an exhibit, outlined a plan to obtain McKeon's ex-husband's compliance with the settlement agreement. The letter also stated that Hunnell was willing "to resume" representing McKeon "without a new retainer fee" in exchange for McKeon agreeing to "an attorney charging lien on the past due fees when the property sells or equitable distribution is effectuated by some other means."

According to the counterclaim, Hunnell never responded to McKeon's December 2014 email or any subsequent attempts to "re-establish contact." "Sometime in 2015, the Garfield properties were sold in a greatly debilitated condition and for a greatly reduced price," resulting in McKeon only receiving $70,000 from the proceeds. The counterclaim further alleged that in 2016, 2017, and 2018, Hunnell refused or ignored requests by McKeon, Conroy, and new

5

attorneys acting on McKeon's behalf to provide copies of McKeon's "divorce and post-divorce file." It was not "until mid-to-late 2018," that Hunnell eventually provided the copies after charging McKeon more than $700 in copying costs.

McKeon's counterclaim, set forth in an amended answer filed on February 10, 2020, contained four counts: legal malpractice (count one); violation of the Rules of Professional Conduct (RPC) (count two); breach of contractual and ethical duties (count three); and discriminatory and predatory action against a disabled, elderly and infirm person (count four). On March 3, 2020, McKeon filed a second amended answer and counterclaim adding a fifth count for fraudulent concealment.

Over McKeon's objection, on April 15, 2020, Hunnell moved to dismiss the counterclaim "in its entirety, with prejudice" pursuant to Rule 4:6-2(e) for failure to state a claim upon which relief can be granted. The parties submitted numerous documents and certifications in support of and in opposition to the motion. Following oral argument conducted on July 10, 2020, the judge entered an order on July 31, 2020, granting the motion. In an accompanying written statement of reasons, the judge recited the governing legal standard for Rule 4:6-2(e) motions and stated he would "focus [his] attention solely on the claims in

6

the [counterclaim] and the attached [settlement a]greement and not on proofs outside that document." In that regard, in adjudicating the motion, the judge analyzed McKeon's second amended answer and counterclaim.[2]

The judge explained that there is a six-year statute of limitations for legal malpractice claims. Thus, the viability of most of McKeon's claims was dependent on "when legal services concluded." The judge determined that counts one, two, and three of the counterclaim failed because nothing in the counterclaim or in McKeon's moving papers suggested McKeon and Hunnell had an attorney-client relationship after 2012.

In support of that finding, the judge relied on the opposing certification of McKeon's current lawyer in which she asserted that "Hunnell's legal services to [McKeon] arguably concluded with her March 18, 2012[3] e-mail to her, after the issuance of the February 7, 2012 Superior Court [o]rder" in the post-judgment matrimonial litigation. Accordingly, the judge determined that March

---

[2] There is no indication in the record that McKeon obtained the court's permission to file the second amended answer and counterclaim. Rule 4:67-4 provides that in summary actions under Rule 4:67-1, as involved here, "[n]o counterclaim . . . shall be asserted without leave of court."

[3] This date appears to be an error as the record shows the email was sent on March 15, 2012.

A-0127-20

18, 2018, was the latest date McKeon could have filed a legal malpractice claim, rendering her February 10, 2020 counterclaim beyond the statute of limitations.

Specifically addressing each count, the judge explained:

> [T]he [f]irst [c]ount must fail because the statute of limitations on such claim leaves no theory of actionability. Even when searching with the most liberality, discovery would provide no new information o[r] facts that legal services have . . . been provided in the actionable period.
>
> Likewise, the [s]econd [c]ount, which is a list of violations of the Rules of Professional [C]onduct [RPC] must also fail. The RPC does not itself give rise to actionable causes of action, but rather violations of such are used to prove malpractice claims. Therefore, like the [f]irst [c]ount, without the legal services being rendered during an actionable period of time, there is no cause of action . . . . for malpractice . . . . The [t]hird [c]ount must fail for similar reasons . . . .

Further, the judge determined the counterclaim did not allege facts to substantiate McKeon's discrimination claim in count four. "Even in the most liberal readings," the judge described McKeon's "assertions in the [f]ourth [c]ount" as "fantastical based on the facts presented" and found no evidence that Hunnell "took advantage of [McKeon's] protected status." The judge noted "even if such had happened, [McKeon] is relying on a theory of malpractice which has already run the statute of limitations." Likewise, the judge determined McKeon's fraudulent concealment claim in count five failed

"because there [was] no theory of actionability." According to the judge, the counterclaim did not even allege that the $700 photocopy charge was "unreasonable." Therefore, the judge dismissed McKeon's entire counterclaim with prejudice.

In this ensuing appeal, McKeon argues the judge misapplied the standard for deciding a Rule 4:6-2(e) motion to dismiss. She also maintains her legal malpractice claim was not barred by the statute of limitations because in her counterclaim, she alleged her attorney-client relationship with Hunnell continued until April 2014, rendering her February 10, 2020 counterclaim within the actionable period. McKeon also argues that her discrimination claim should have survived, as she alleged Hunnell engaged in a "consistent pattern of wrongful behavior."

We review de novo the trial court's grant of a motion to dismiss under Rule 4:6-2(e) and "owe[] no deference to the trial court's legal conclusions." Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019). Rule 4:6-2(e) provides that a counterclaim may be dismissed for "failure to state a claim upon which relief can be granted." "The standard traditionally utilized by courts to determine whether to dismiss a pleading . . . is a generous one." Green, 215 N.J. at 451. In that regard, "'our

9

inquiry is limited to examining the legal sufficiency of the facts alleged on the face of the complaint.'" Ibid. (quoting Printing Mart, 116 N.J. at 746). "At this preliminary stage of the litigation the [c]ourt is not concerned with the ability of plaintiffs to prove the allegation contained in the complaint." Printing Mart, 116 N.J. at 746.

In interpreting the Rule, our Supreme Court explained in Printing Mart that "the test for determining the adequacy of a pleading . . . [is] whether a cause of action is 'suggested' by the facts." 116 N.J. at 746 (quoting Velantzas v. Colgate-Palmolive Co., 109 N.J. 189, 192 (1988)). The Court directed judges to "'search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim" and grant "opportunity . . . to amend if necessary.'" Ibid. (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). "Moreover, on a motion to dismiss the entire complaint, the court has the discretion to dismiss some of the counts." Pressler & Verniero, Current N.J. Court Rules, cmt. 4.1.1 on R. 4:6-2(e) (2022). Nonetheless, "the essential facts supporting plaintiff's cause of action must be presented in order for the claim to survive; conclusory allegations are insufficient in that regard." Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012).

The Court also stressed that motions to dismiss under Rule 4:6-2(e) "should be granted in only the rarest of instances" and generally "without prejudice" to the "filing of an amended complaint." Printing Mart, 116 N.J. at 772; see also Smith v. SBC Commc'ns Inc., 178 N.J. 265, 282 (2004). Nevertheless, dismissal with prejudice is appropriate if the claim is barred by an "impediment such as a statute of limitations." Printing Mart, 116 N.J. at 772.

Pertinent to this appeal, the elements of a legal malpractice claim are: "(1) the existence of an attorney-client relationship creating a duty of care by the defendant attorney, (2) the breach of that duty by the defendant, and (3) proximate causation of the damages claimed by the plaintiff." Nieves v. Off. of the Pub. Def., 241 N.J. 567, 583 (2020) (quoting McGrogan v. Till, 167 N.J. 414, 425 (2001)). The statute of limitations for a legal malpractice claim is six years, N.J.S.A. 2A:14-1, but, under the applicable discovery rule, the cause of action accrues when "the client suffers actual damage and discovers, or through the use of reasonable diligence should discover, the facts essential to the malpractice claim," Rogers v. Cape May Cnty. Off. of the Pub. Def., 208 N.J. 414, 422 (2011) (quoting Grunwald v. Bronkesh, 131 N.J. 483, 494 (1993)).

To be sure, "the RPCs set forth 'the minimum standard of competence governing the [legal] profession.'" Meisels v. Fox Rothschild LLP, 240 N.J.

286, 299 (2020) (quoting Albright v. Burns, 206 N.J. Super. 625, 634 (App. Div. 1986)). However, an RPC violation, "standing alone . . . does not create a cause of action for damages in favor of a person allegedly aggrieved by that violation." Ibid.; see also Sommers v. McKinney, 287 N.J. Super. 1, 13 (App. Div. 1996) ("Violation of the rules of professional conduct do[es] not per se give rise to a cause of action in tort.").

The elements of a fraudulent concealment claim are:

> (1) That defendant in the fraudulent concealment action had a legal obligation to disclose evidence in connection with an existing or pending litigation;
>
> (2) That the evidence was material to the litigation;
>
> (3) That plaintiff could not reasonably have obtained access to the evidence from another source;
>
> (4) That defendant intentionally withheld, altered or destroyed the evidence with purpose to disrupt the litigation; [and]
>
> (5) That plaintiff was damaged in the underlying action by having to rely on an evidential record that did not contain the evidence defendant concealed.
>
> [Rosenblit v. Zimmerman, 166 N.J. 391, 406-07 (2001).]

A fraudulent concealment claim must be pled with particularity. See R. 4:5-8(a).

Here, the judge determined that the attorney-client relationship between McKeon and Hunnell ended in 2012 and concluded that McKeon's last opportunity to file a legal malpractice claim was in 2018. However, a legal malpractice cause of action may accrue after the representation has ended. See Vastano v. Algeier, 178 N.J. 230, 242 (2003) (concluding the plaintiffs' cause of action accrued when they took possession of their case file after firing their attorney).

More significantly for our purposes, in the counterclaim, McKeon alleged that the parties' attorney-client relationship continued into 2014, at least until McKeon received the April 2014 letter from Hunnell. The judge should have taken that assertion at face value. See Banco Popular N. Am. v. Gandi, 184 N.J. 161, 184 (2005) (explaining that the issue on a Rule 4:6-2(e) motion is not whether the allegations are true "but only whether they [a]re made").

Additionally, in the counterclaim, McKeon alleged that Hunnell's negligence in litigating the case led to a greatly reduced sales price for the properties in 2015 and a monetary loss for McKeon. Based on McKeon's allegation that Hunnell's negligent representation was the proximate cause of her losses, McKeon averred sufficient facts to state a legal malpractice claim within the limitations period. Because we are convinced that "a cause of action

is 'suggested' by the facts," Printing Mart, 116 N.J. at 746 (quoting Velantzas, 109 N.J. at 192), we agree that the judge misapplied the standard for evaluating a Rule 4:6-2(e) motion and erred in dismissing counts one, two, and three, all of which were dependent upon the continuing attorney-client relationship.

On the other hand, we are satisfied the judge correctly dismissed the fraudulent concealment claim in count five, as McKeon did not allege that she was damaged in any existing or pending litigation by not having access to her files – she only complained about copying costs. Likewise, the judge correctly dismissed the discrimination count (count four) because in the counterclaim, McKeon only presented conclusory allegations and did not allege sufficient facts to state an unlawful discrimination claim. See N.J.S.A. 10:5-12 (prohibiting certain discriminatory practices in employment, public accommodations, housing, and lending). Indeed, "conclusory allegations are insufficient" to withstand a Rule 4:6-2(e) dismissal. Scheidt, 424 N.J. Super. at 193. Nonetheless, following the guidance of Printing Mart, these claims should have been dismissed without prejudice in case McKeon can discover and plead sufficient facts. 116 N.J. at 772.

Next, we turn to the denial of McKeon's cross-motion to amend the counterclaim. In a fourth amended answer and counterclaim,[4] McKeon sought leave to add another legal malpractice count based on allegations of fraudulent billing. According to McKeon, Hunnell submitted billing records with her motion to dismiss that revealed "duplicative charges, overcharges and [a] failure to accurately record and deduct payments received." McKeon also claimed she did not receive Hunnell's billing records prior to the fee arbitration hearing despite the judge's observation that the Fee Committee confirmed in its statement of reasons that McKeon had received Hunnell's submissions, including billing records.

The judge denied McKeon's motion to amend, reasoning:

> The [c]ourt . . . cannot simply ignore the fact that [McKeon] and [her new attorney] had their chance to attack the alleged corrupted billing practices of [Hunnell] during the [f]ee [a]rbitration. Not only did the Committee of same find that the billing was reasonable, [McKeon], who was represented by [her current attorney] had every opportunity to cross-examine [Hunnell] about the billings. This amendment is little more than a veiled attempt to improperly appeal the [f]ee [a]rbitration [d]etermination, and as such, the [c]ourt denies [McKeon's] motion to [a]mend.

---

[4] There is no reference in the record to a third amended answer and counterclaim.

Rule 4:9-1 provides that after the time for amending pleadings as a matter of course has passed, "a party may amend a pleading only by written consent of the adverse party or by leave of court which shall be freely given in the interest of justice." Our Supreme Court explained that courts should liberally grant Rule 4:9-1 motions and that "the granting of a motion to file an amended complaint always rests in the court's sound discretion." Notte v. Merchs. Mut. Ins. Co., 185 N.J. 490, 501 (2006) (quoting Kernan v. One Wash. Park Urb. Renewal Assocs., 154 N.J. 437, 457 (1998)). "That exercise of discretion requires a two-step process: whether the non-moving party will be prejudiced, and whether granting the amendment would nonetheless be futile." Ibid.

An amendment is futile when the new claim would fail as a matter of law. "'In other words, there is no point to permitting the filing of an amended pleading when a subsequent motion to dismiss must be granted.'" Ibid. (quoting Interchange State Bank v. Rinaldi, 303 N.J. Super. 239, 257 (App. Div. 1997)). However, courts make that determination "without consideration of the ultimate merits of the amendment." Ibid. (quoting Interchange State Bank, 303 N.J. Super. at 256).

Although McKeon could have challenged the accuracy of Hunnell's billing records during the fee arbitration hearing, she could not have brought a

legal malpractice claim before the Fee Committee because "a Fee Committee lacks jurisdiction to decide legal malpractice claims." Saffer v. Willoughby, 143 N.J. 256, 266 (1996). Consequently, even if McKeon had raised the issue during arbitration, because the Fee Committee had no jurisdiction to decide the issue, McKeon would not have been precluded from later filing a legal malpractice claim based on a fraudulent billing allegation. See id. at 267 (declaring "neither the evidence submitted to a Fee Committee nor the 'decision or settlement made in connection with a fee arbitration proceeding shall be admissible evidence in a legal malpractice action' in the Superior Court" (quoting R. 1:20A-2(c)(2)(B))). Because the judge had no basis for concluding the fraudulent-billing legal malpractice claim was futile and made no finding of prejudice to Hunnell, the judge erred in denying McKeon's motion to amend the counterclaim given the liberality with which such motions must be considered.

Finally, we address the denial of McKeon's cross-motion to stay the arbitration award. In support of the motion, McKeon certified that had she "been provided with Hunnell's billing record prior to the [f]ee [a]rbitration hearing, [she] would have requested that fee arbitration be withdrawn and pursued a legal malpractice action." As previously noted, the judge observed that McKeon had received Hunnell's billing records based on the Fee Committee's confirmation

that McKeon had the relevant billing records prior to the arbitration hearing. Further, the judge pointed out that McKeon had not appealed the arbitration award within the applicable timeframe. See R. 1:20A-3 (governing appeal of fee arbitration decisions).

Consequently, the judge concluded that McKeon was barred from seeking a stay, explaining:

> [T]his [c]ourt cannot and will not stay the fee arbitration award. Failure to follow the appeal procedure . . . within the applicable timelines bars [McKeon] from staying such determinations now. [McKeon] who initiated the matter, offered testimony, and who was given the chance to cross-examine [Hunnell] cannot simply stay the unanimous finding by an unbiased committee. [Hunnell] met her burden of proof to the Committee to prove reasonable fees and as such the [c]ourt refuses to stay the fee arbitration determination.

We review the denial of a motion to stay an arbitration award for abuse of discretion. Granata v. Broderick, 446 N.J. Super. 449, 469 (App. Div. 2016). In Saffer, the Court announced that "[i]f the substantial basis for a malpractice claim is discovered after a Fee Committee has awarded a fee, a client may seek a stay of the award from the Superior Court either before or after the award has been confirmed," applying the discovery rule. 143 N.J. at 268. The Court also

explained that the filing of the legal malpractice action ordinarily "should be a precondition to granting a stay of a fee award." Id. at 269.

McKeon relies on Saffer's holding to support her position. However, McKeon's reliance is misguided because ample evidence in the record supports the judge's finding that McKeon obtained the billing records prior to the Fee Committee awarding the fee. See Granata, 446 N.J. Super at 467 (deferring to the trial judge's findings that are "supported by adequate, substantial, and credible evidence"). Because McKeon possessed the billing records prior to the determination by the Fee Committee, she did not discover the substantial basis for a fraudulent-billing legal malpractice claim after the fee was awarded. Additionally, McKeon knew the basis for her other malpractice claims well before the arbitration hearing. Therefore, we discern no abuse of discretion in the judge's denial of her motion to stay the arbitration award.

In sum, we affirm the judge's denial of McKeon's motion to stay the arbitration award and affirm the judge's dismissal of counts four and five of the second amended answer and counterclaim, but remand for the entry of an order dismissing counts four and five without prejudice. We reverse the judge's dismissal of counts one, two, and three of the counterclaim and the denial of McKeon's motion to file an amended counterclaim to add a legal malpractice

count based on allegations of fraudulent billing. We remand for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0127-20