**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1198-19

JEFFREY C. GILBERT,

     Plaintiff-Appellant,

v.

WARREN COUNTY
PROSECUTOR
RICHARD T. BURKE,
WARREN COUNTY
PROSECUTOR'S OFFICE,
TOWNSHIP OF MANSFIELD,
and CHIEF OF POLICE
MICHAEL REILLY,

     Defendants-Respondents.

_____

Argued March 22, 2021 – Decided April 30, 2021

Before Judges Sabatino, Currier and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Warren County, Docket No. L-0128-19.

Stuart J. Alterman argued the cause for appellant (Alterman & Associates, LLC, attorneys; Stuart J. Alterman, of counsel; Arthur J. Murray, on the brief).

Michael R. Sarno, Deputy Attorney General, argued the cause for respondents Richard T. Burke and Warren County Prosecutor's Office (Gurbir S. Grewal, Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Michael R. Sarno, on the brief).

Susan A. Lawless argued the cause for respondents Township of Mansfield and Michael Reilly (Florio Perrucci Steinhardt Cappelli Tipton & Taylor LLC, attorneys; Susan A. Lawless, of counsel and on the briefs).

PER CURIAM

After settling disciplinary charges lodged against him, plaintiff Jeffrey C. Gilbert, a police officer employed by the Township of Mansfield, brought this lawsuit in the Law Division against the Township, the Township's Chief of Police Michael Reilly, the Warren County Prosecutor's Office ("WCPO"), and Warren County Prosecutor Richard T. Burke.[1]  The lawsuit alleges that defendants violated plaintiff's due process rights and his rights under the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 to -2 ("NJCRA"), because of restrictions the Prosecutor placed on plaintiff's work assignments in the aftermath of his disciplinary matter.

---

[1]  To the extent plaintiff seeks prospective injunctive relief against the County Prosecutor, we deem that request to pertain to Burke's successor in office.  See R. 4:34-4 (regarding substitution of public officers sued in their official capacity).

The restrictions were imposed by the Prosecutor in order to minimize the need for disclosure of plaintiff's disciplinary record to criminal defense counsel under Brady v. Maryland, 373 U.S. 83 (1963), and the likely resultant use of those materials to impeach his testimony as a witness for the State in criminal cases. Plaintiff theorizes that the restrictions amount to de facto discipline, and that he should have been provided with a hearing before they were imposed.

Defendants moved to dismiss the lawsuit under Rule 4:6-2(e) for failure to present a viable claim upon which relief may be granted. After considering the parties' contentions, the trial court determined that plaintiff's allegations are not actionable as a matter of law, and therefore dismissed the lawsuit. This appeal ensued.

Even viewing plaintiff's contentions with appropriate indulgence, we agree with the trial court that he has not presented actionable claims against these defendants. We affirm, substantially for the reasons set forth in the trial court's oral opinion.

In particular, we are satisfied that the "Brady restrictions" placed on plaintiff's future participation in criminal investigations are justified, that they do not comprise discipline by his employer, and that plaintiff was already

3

afforded a fair opportunity to have a non-departmental hearing or judicial review and elected instead to settle his case.

## I.

The relevant chronology of events is largely undisputed, and we need not recite it extensively here. This brief summary will suffice for our purposes.

In November 2017, plaintiff entered into a settlement agreement with the Township to resolve disciplinary charges against him arising from his alleged improper conduct during a driving-while-intoxicated ("DWI") investigation earlier that year. After an Internal Affairs investigation and service upon plaintiff of notice of the charges, plaintiff accepted as part of the settlement a six-day suspension from his duties without pay.[2] Plaintiff was represented by experienced counsel in negotiating the settlement.

Among other things, the settlement agreement specified that the parties waived "all investigations, disputes, appeals, grievances, claims or causes of action that have been raised or could have been raised . . . related to [plaintiff]'s [c]onduct[,]" with the caveat that "the disciplinary action will remain in his

---

[2] The trial court's opinion recites that departmental hearings concerning the disciplinary charges were conducted before the settlement was achieved, but the redacted version of the record supplied on appeal does not confirm this with documentation.

A-1198-19

employment file and may be used as evidence of progressive discipline in the event of future disciplinary charges." The agreement further provided that it is enforceable in Superior Court and that "[n]one of the obligations, covenants or releases set forth herein may be released, discharged or abandoned, supplemented, modified or changed in any manner," except by written agreement.

On or about June 13, 2018, Burke, in his capacity as the then-Prosecutor of Warren County, issued a letter to Police Chief Reilly (the "Brady letter") about plaintiff's disciplinary record. The letter refers to the 2017 incident of alleged misconduct in the DWI matter, the settlement agreement, and plaintiff's suspension. Two other internal affairs investigations concerning plaintiff are listed in the letter, but redacted.

The Brady letter provides that plaintiff "will be permitted to participate in" criminal investigations for the Mansfield Township Police Department only under certain conditions, including that: (1) he "may not participate in any accident or DWI investigations"; (2) he "may not be the primary investigator on a case"; (3) any interview he conducts must be witnessed by another officer; (4) he may not collect evidence; (5) he must have a co-affiant on any search or arrest warrant; (6) if he is to be a witness in a prosecution, he must advise the

5                                                                                      A-1198-19

prosecuting attorney of his disciplinary record prior to testifying; and (7) he "may not participate in any other countywide taskforce without the approval of the Prosecutor."

The letter also states that plaintiff will be notified when related disclosures are made to a court in the course of a prosecution, and that if "the judge deems the information admissible, [plaintiff] will be required to answer questions from defense attorneys regarding those incidents."

Finally, the letter states that "the terms and conditions of [plaintiff's] participation in investigations may be changed" and that the Prosecutor's Office "must be notified in advance [of any change to plaintiff's assignment] so that [it] can review the terms and conditions in light of the new assignment."

The Prosecutor's issuance of the Brady letter caused plaintiff to bring this lawsuit in April 2019. In essence, he contends the restrictions the letter imposes upon his work assignments substantially curtail his professional opportunities for promotions within the police force. He maintains the letter imposes de facto, after-the-fact discipline upon him beyond what was negotiated through the disciplinary settlement.

Count One of plaintiff's complaint, asserted against defendants Burke and Reilly, alleged that they denied plaintiff due process guaranteed by N.J.S.A.

40A:14-147 and Attorney General guidelines, in violation of the NJCRA and the State Constitution. In that count, plaintiff sought an order compelling compliance with the hearing procedures set forth in N.J.S.A. 40A:14-147 and "nullifying . . . the discipline enunciated in the [Brady] letter[,]" as well as compensatory damages, punitive damages, and attorney's fees and costs.

Count Two of the complaint sought damages against defendants WCPO and the Township for "failing to adequate[ly] screen or train" Burke and Reilly.

In lieu of filing answers, defendants moved to dismiss the complaint under Rule 4:6-2(e) for failure to state a viable claim upon which relief may be granted. As part of their arguments for dismissal, defendants argued that the restrictions upon plaintiff's investigatory functions as a police officer set forth in the Brady letter are justified measures to minimize the State's need to use him as a witness in criminal prosecutions. Defendants further argued that the restrictions are not a form of "discipline." They emphasize that plaintiff had a fair opportunity to obtain a hearing or judicial review of his disciplinary matters under N.J.S.A. 40A:14-147, and instead he waived such processes and chose to settle the charges on terms that enabled him to keep his job with only a short suspension. Defendants further contend they are insulated from liability under principles of absolute or qualified immunity.

7

After briefing and oral argument, the trial court issued an oral decision on October 2, 2019, ruling that plaintiff failed to advance claims upon which relief may be granted as a matter of law. Specifically, with respect to defendants Reilly and the Township, the court determined they "did nothing in this case except receive the [P]rosecutor's letter." The court noted they "took no disciplinary action against" plaintiff, and "did not dock his pay . . . [or] modify his duty schedule."

As the court described them, the <u>Brady</u> letter restrictions were "not disciplinary matters but simply tools to see that the [P]rosecutor is not . . . harmed by . . . [plaintiff] being the only witness" in a criminal matter. The restrictions are justified as "the result of the [P]rosecutor's direction by the United States Supreme Court [in <u>Brady</u> and its progeny] to issue such a letter in the interest of justice in the criminal justice system."

The court additionally found that plaintiff failed to point to "any body of law allowing or granting a hearing to a police officer" in his situation. Given the circumstances, the court found that defendants were immune from liability. The court discerned no basis to grant plaintiff leave to amend his allegations with additional legal theories or factual contentions. The court accordingly dismissed the complaint with prejudice, finding it "clear" that no further

discovery would alter the legal analysis.

## II.

On appeal, plaintiff's counsel has clarified and essentially focused his arguments on two facets of the trial court's decision.

First, plaintiff contends that, regardless of whether the dismissal of his claims for monetary damages was proper and the immunities from such damages apply, the court should have preserved and granted his demand for injunctive relief. Specifically, plaintiff maintains he is entitled to a hearing or judicial review under N.J.S.A. 40A:14-147, a statute that provides an avenue for police officers to contest disciplinary actions against them in non-Civil Service municipalities. See In re DiGuglielmo, 465 N.J. Super. 42 (App. Div. 2020) (detailing and interpreting the terms of the statute).

Second, plaintiff argues that, at the very least, the court should have only dismissed his lawsuit "without prejudice," enabling him to add a count for breach of contract and possibly other claims.[3]

In reviewing these and the rest of plaintiff's arguments, we bear in mind—as did the trial court—the well-established standards for dismissal of a complaint

---

[3] In his brief on appeal plaintiff withdrew his appeal as it relates to the dismissal of all economic and money damages related to Count One of his complaint and the dismissal of Count Two.

A-1198-19

under Rule 4:6-2(e). A defendant's motion to dismiss under that Rule must be granted if the complaint "fails 'to articulate a legal basis entitling plaintiff to relief.'" Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 112 (App. Div. 2009) (quoting Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005)). For such motions, the trial court must search "the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned from even an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)).

Ordinarily when such dismissal motions are granted, the court's order should be "without prejudice to a plaintiff's filing of an amended complaint." Id. at 772. However, the court may still grant dismissal with prejudice if it appears that a future amendment of the complaint would be futile and serve no purpose. See, e.g., Johnson v. Glassman, 401 N.J. Super. 222, 246-47 (App. Div. 2008) (affirming a dismissal with prejudice under the Rule).

An appellate court reviews the dismissal of a complaint for failure to state a claim de novo, employing the same standard used by the trial court. Scheidt

A-1198-19

v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012).

Viewing the circumstances here with appropriate indulgence, we concur with the trial court's sound decision to dismiss plaintiff's complaint with prejudice. A few comments by way of amplification are in order.

The nub of this case concerns the Prosecutor's issuance of the Brady letter to Chief of Police Reilly. We wholeheartedly agree with the trial court that the letter's limitations on plaintiff's investigatory functions are reasonably designed to protect the State from an undue litigation disadvantage by reducing the situations when plaintiff needs to be used as a witness in a criminal proceeding.

There is a strong likelihood that if the State had to call plaintiff as a witness, his prior disciplinary record would need to be disclosed in full or in part to opposing defense counsel as exculpatory material under Brady. The defense, in turn, would be able to use that information to impeach plaintiff's credibility as a witness. See Giglio v. United States, 405 U.S. 150, 154-55 (1972). The Prosecutor's letter sensibly attempts to minimize the situations in which the State might need to rely on plaintiff as a witness, while still honoring its constitutional obligations to the defense under Brady.

Plaintiff does not quarrel on appeal with these principles, but instead asserts he is now entitled, in retrospect, to a hearing or judicial review of his

11

disciplinary case under N.J.S.A. 40A:14-147. We disagree. The statute covers suspensions, removals, fines, and reductions in an officer's rank—none of which occurred here as a result of the Prosecutor's letter. The letter does not amount to a "de facto" reduction in rank. Plaintiff has not been fired or demoted and his salary has not been reduced.

Moreover, even if we were to adopt plaintiff's expansive interpretation of the statute, he clearly waived in the settlement agreement his opportunity for a further hearing or judicial review. The plain language of the agreement unambiguously expresses such a relinquishment of further review. Plaintiff, with the assistance of counsel, voluntarily entered into the agreement. Defendants did not take away his rights of due process.

Plaintiff cannot reasonably contend he was unfairly surprised by the Brady letter restrictions after he chose not to litigate the disciplinary charges. The Brady doctrine has been in existence for decades, and the State's constitutional obligation to disclose impeachment material reposed in a police officer's personnel file when that officer will serve as a trial witness is hardly a novelty.[4]

---

[4] The June 18, 2019 memorandum of the Attorney General concerning Brady/Giglio disclosures provides no support for plaintiff's legal arguments. The memorandum is limited to law enforcement personnel of the Department of Law and Public Safety and does not cover local police officers. Moreover, it
(continued)

Plaintiff's request for a chance to amend his complaint is likewise unavailing. Defendants did not breach any contractual promises. The settlement agreement plainly allows the disciplinary action to "remain in [plaintiff's] employment file." The agreement does not promise that the State will withhold the disciplinary information from a <u>Brady</u> disclosure. Nor does it assure plaintiff that his job assignments will be unaffected by any future witness-related measures of the Prosecutor's Office derived from its constitutional obligations under <u>Brady</u>. No other proffered revisions of the complaint will make it viable.

We have considered the remainder of plaintiff's arguments on appeal— including his inconsequential claim that the trial court should have treated defendants' application as a summary judgment motion under <u>Rule</u> 4:46-2

---

details procedures to be followed before <u>Brady</u>/<u>Giglio</u> disclosures are made by prosecutors to defense counsel or a court. It does not confer upon individual officers a right to a hearing concerning prophylactic <u>Brady</u>-related limitations that might be imposed upon their work assignments. No other Attorney General guidelines or policy memoranda appear to be on point, either. In particular, Attorney General Directive No. 2019-6 (issued December 4, 2019), cited in plaintiff's appendix, does not affect our analysis. Although that Directive advises prosecutors to refrain from promulgating "do not call lists" of officers "who can never be called as witnesses," <u>id.</u> at 8-9 (emphasis added), the <u>Brady</u> letter in this case contains no such absolute prohibition on using plaintiff as a witness.

because of references to a few items outside of the pleadings—and conclude

they lack sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-1198-19