SYLLABUS

*This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.*

## AC Ocean Walk, LLC v. American Guarantee and Liability Insurance Company
### (A-28-22) (087304)

**Argued September 27, 2023 -- Decided January 24, 2024**

**PATTERSON, J., writing for a unanimous Court.**

In this insurance coverage action, plaintiff AC Ocean Walk, LLC (Ocean Walk) seeks coverage under its commercial property insurance policies for losses sustained during the pandemic caused by the SARS-CoV-2 virus (the COVID-19 pandemic). Ocean Walk claims that by virtue of the presence of SARS-CoV-2 in its facilities and its government-mandated temporary suspension of operations, it sustained a "direct physical loss" of or "direct physical . . . damage" to its property as those terms are used in the insurance policies issued by defendants. Ocean Walk also argues that an exclusion in the policies for certain claims based on "contamination" did not bar its coverage claims.

In 2018, Ocean Walk opened Ocean Casino Resort, located on the Atlantic City Boardwalk. Ocean Walk obtained property insurance policies from defendants American Guarantee and Liability Insurance Company, AIG Specialty Insurance Company, and Interstate Fire & Casualty Company. Ocean Walk alleges that, in combination with a policy issued by a fourth insurer that is not part of this appeal, defendants' policies obligated them to provide Ocean Walk up to $50,000,000 of primary policy limits per occurrence, in excess of any applicable deductible for the policy period.

The property insurance policies issued by defendants set forth identical base policy forms. Each policy provided that it insured "against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location," subject to the terms, conditions, and exclusions stated in the policy. Each policy contained a "contamination exclusion" providing in part that -- "unless it results from direct physical loss or damage not excluded by this Policy" -- "Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy" is excluded.

1

Ocean Walk closed its facilities in March 2020 and then reopened them in July 2020, both in accordance with Executive Orders issued by Governor Philip D. Murphy. Ocean Walk submitted a claim for coverage under the policies issued by defendants. When they denied coverage -- aside from agreeing to pay their proportionate shares of a $1,000,000 sublimit under the policies' Interruption by Communicable Disease amendatory endorsement -- Ocean Walk filed a complaint. All defendants moved to dismiss the complaint for failure to state a claim.

The trial court concluded that Ocean Walk had adequately pled facts supporting a finding of "direct physical loss" of or "direct physical . . . damage" to its property because it had alleged that due to the SARS-CoV-2 virus, it was unable to "operate its gaming floor and hotel rooms" or to "operate according to its essential functions." And, invoking Nav-Its, Inc. v. Selective Insurance Co. of America, 183 N.J. 110, 118-24 (2005), the trial court found the contamination exclusion inapplicable to the claims asserted in this matter. The Appellate Division reversed the trial court's denial of the motions to dismiss filed by defendants. The Court granted certification. 252 N.J. 606 (2023).

**HELD:** Ocean Walk has not pled facts supporting a conclusion that its business losses were caused by a "direct physical loss" or "direct physical . . . damage" under the policy language. And even if Ocean Walk had pled facts supporting a finding of a covered "loss" or "damage," the losses it alleges are excluded from coverage by the policies' contamination exclusion.

1. Upon reviewing relevant dictionary definitions and case law from other jurisdictions, the Court concludes that, to show a "direct physical loss" of its property or "direct physical . . . damage" to its property under the policy language at issue, Ocean Walk was required to demonstrate that its property was destroyed or altered in a manner that rendered it unusable or uninhabitable. The policies' "time element" provisions addressing business interruption underscore that interpretation because those provisions would be meaningless if there has been no physical damage to property that would require repairs, rebuilding, or replacement. (pp. 20-25)

2. In its complaint, Ocean Walk defines the "direct physical loss" of its property and the "direct physical . . . damage to its property" to be the "actual and/or threatened presence of Coronavirus particles" on its premises. It alleges that, in compliance with governmental directives, it was forced to close to the public in March 2020 and that it reopened in July 2020 with restricted or limited operations. But those alleged facts do not support a finding of a "direct physical loss" of or "direct physical . . . damage" to Ocean Walk's property. Here, absent the executive orders, Ocean Walk would have been able to use its property for casino and other entertainment functions with no suspension of its operations. The Court's holding that Ocean Walk's COVID-19 allegations do not satisfy the policy language

2

comports with the vast majority of decisions by federal and state appellate courts that have addressed that issue. Ocean Walk did not allege facts supporting coverage under the policy language in dispute, and the deficiency in its allegations cannot be remedied by discovery. (pp. 25-29)

3. In support of its argument that the contamination exclusion in the policies issued by defendants does not apply here, Ocean Walk notes that the policies' definition of "contaminant" does not include a "virus" or "pathogen or pathogenic organism." But the definition of "contaminant" has no bearing on this appeal. The word "contaminant" appears nowhere in the policies' contamination exclusion. That exclusion instead provides that, subject to an exception for radioactive contamination, the policies do not cover "[c]ontamination" and "any cost due to [c]ontamination" -- including "the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy" -- unless the contamination "results from direct physical loss or damage not excluded" by the policy. The policies define "contamination" to include "any condition of the property due to the actual presence" of any "pathogen or pathogenic organism," or "virus." As Ocean Walk alleges in its complaint, its claim arises from a "highly contagious and easily transmitted human pathogen." The presence of SARS-CoV-2 in Ocean Walk's facilities falls squarely within the description of "contamination" in the policies. The Court explains why its decision in Nav-Its does not alter that conclusion. (pp. 29-33)

       **AFFIRMED and REMANDED to the trial court.**

**CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE PATTERSON's opinion. JUSTICES SOLOMON and FASCIALE did not participate.**

3

SUPREME COURT OF NEW JERSEY

A-28 September Term 2022

087304

AC Ocean Walk, LLC,

Plaintiff-Appellant,

v.

American Guarantee and Liability
Insurance Company, AIG Specialty
Insurance Company, and Interstate
Fire and Casualty Company,

Defendants-Respondents,

and

National Fire & Marine
Insurance Company,

Defendant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| September 27, 2023 | January 24, 2024 |

Stephen M. Orlofsky argued the cause for appellant AC
Ocean Walk, LLC (Blank Rome, attorneys; Stephen M.
Orlofsky, Michael A. Iannucci, Michael R. Darbee, Justin
F. Lavella of the District of Columbia and Virginia bars,
admitted pro hac vice, and Alexander H. Berman of the
District of Columbia and Virginia bars, admitted pro hac
vice, on the briefs).

1

David R. Roth (Wiggin and Dana) of the Connecticut and New York bars, admitted pro hac vice, argued the cause for respondent American Guarantee and Liability Insurance Company (Ford Marrin Esposito Witmeyer & Gleser and Wiggin and Dana, attorneys; Edward M. Pinter, Jon R. Grabowski, Caroline McKenna, David R. Roth, and Jeffrey R. Babbin (Wiggin and Dana) of the Connecticut and District of Columbia bars, admitted pro hac vice, on the joint briefs).

Brett Solberg of the Texas bar, admitted pro hac vice, argued the cause for respondent Interstate Fire & Casualty Company (DLA Piper, attorneys; Michael D. Hynes, on the joint briefs).

Keith Moskowitz of the Illinois, New York, and Connecticut bars, admitted pro hac vice, argued the cause for respondent AIG Specialty Insurance Company (Dentons US, attorneys; Shawn L. Kelly, on the joint briefs).

Nicholas M. Insua argued the cause for amicus curiae United Policyholders (Reed Smith, Lite DePalma Greenberg & Afanador, and Hunton Andrews Kurth, attorneys; Nicholas M. Insua, Bruce D. Greenberg, Kevin V. Small, Lorelie S. Masters (Hunton Andrews Kurth) of the District of Columbia and New York bars, admitted pro hac vice, Michael S. Levine (Hunton Andrews Kurth) of the District of Columbia, New York, Massachusetts and Virginia bars, admitted pro hac vice, and Olivia G. Bushman (Hunton Andrews Kurth) of the District of Columbia, Virginia, and California bars, admitted pro hac vice, on the brief).

Sherilyn Pastor submitted a brief on behalf of amicus curiae Restaurant Law Center (McCarter & English, attorneys; Sherilyn Pastor and David R. Kott, of counsel and on the brief).

Daniel E. Bryer submitted a brief on behalf of amici curiae Insurance Council of New Jersey, American Property Casualty Insurance Association, and National Association of Mutual Insurance Companies (Robinson & Cole, attorneys; Daniel E. Bryer and Wystan M. Ackerman of the Connecticut, New York, and Massachusetts bars, admitted pro hac vice, on the brief).

Michael A. Moroney submitted a brief on behalf of amicus curiae Medical Society of New Jersey (Flynn Watts, attorneys; Michael A. Moroney, on the brief).

Esther Berezofsky submitted a brief on behalf of amicus curiae New Jersey Association for Justice (Motley Rice New Jersey, attorneys; Esther Berezofsky, on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this insurance coverage action, plaintiff AC Ocean Walk, LLC (Ocean Walk) seeks coverage under its commercial property insurance policies for losses sustained during the pandemic caused by the SARS-CoV-2 virus (the COVID-19 pandemic).

Ocean Walk, which operates a casino and other entertainment facilities, alleged that it suspended its operations on the effective date of an executive order mandating the closure of facilities to the public because of the COVID-19 pandemic, and then resumed limited operations approximately three months later when another executive order lifted some of the restrictions. It claimed that by virtue of the presence of SARS-CoV-2 in its facilities and its

3

government-mandated temporary suspension of operations, it had sustained a "direct physical loss" of or "direct physical . . . damage" to its property as those terms are used in the insurance policies issued by defendants. Ocean Walk also argued that an exclusion in the policies for certain claims based on "contamination" did not bar its coverage claims. It contended that it was therefore entitled to up to $50,000,000 in coverage under the policies.

The insurers denied coverage under the provisions of the policies, except for coverage under an endorsement subject to a $1,000,000 sublimit. Ocean Walk filed an action for a declaratory judgment, damages, and other relief.

The trial court denied motions to dismiss for failure to state a claim filed by three of the insurers. The court concluded (1) that Ocean Walk's alleged business losses constituted a "direct physical loss" of or "direct physical . . . damage" to its property, and (2) that those losses were not excluded from coverage under the policies' contamination exclusion. The Appellate Division reversed as to both determinations.

We concur with the Appellate Division that Ocean Walk has not pled facts supporting a conclusion that its business losses were caused by a "direct physical loss" or "direct physical . . . damage" under the policy language. We further agree with the appellate court that even if Ocean Walk had pled facts

4

supporting a finding of a covered "loss" or "damage," the losses it alleges are excluded from coverage by the policies' contamination exclusion.

Accordingly, we affirm the Appellate Division's judgment reversing the trial court's denial of the defendant insurers' motions to dismiss.

I.

A.

On June 28, 2018, Ocean Walk opened Ocean Casino Resort, located on the Atlantic City Boardwalk. The facility consisted of 138,000 square feet of casino and gaming space, including the largest virtual gaming suite in the United States; hotel accommodations; bars; cafés; restaurants; a nightclub; a beach club; meeting spaces; pools; spas; fitness centers; and a concert venue.

This appeal centers on three commercial insurance policies issued to Ocean Walk: a policy issued by defendant American Guarantee and Liability Insurance Company (AGLIC); a policy issued by defendant AIG Specialty Insurance Company (AIG); and a policy issued by defendant Interstate Fire & Casualty Company (IFCC). Ocean Walk alleges that, in combination with a policy issued by defendant National Fire & Marine Insurance Company (NFMIC), the AGLIC, AIG, and IFCC policies obligated the insurers to provide Ocean Walk up to $50,000,000 of primary policy limits per occurrence, in excess of any applicable deductible for the policy period.

The property insurance policies issued by AGLIC, AIG, and IFCC set forth identical base policy forms. Each policy provided that it insured "against direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location," subject to the terms, conditions, and exclusions stated in the policy. Each policy defined a "Covered Cause of Loss" to denote "[a]ll risks of direct physical loss of or damage from any cause unless excluded." Each policy defined "Covered Property" to include, among other categories of property, the insured's interest in "buildings (or structures) including new construction, additions, alterations, and repairs that the [i]nsured owns, occupies, leases or rents," as well as the insured's "interest in Personal Property, including Improvements and Betterments."

The policies issued by AGLIC, AIG, and IFCC contained an "Interruption by Communicable Disease" amendatory endorsement. Subject to a $1,000,000 sublimit, each insurer's amendatory endorsement provided in part that the insurer

> will pay for the actual Gross Earnings loss sustained by the Insured, as provided by this Policy, resulting from the necessary Suspension of the Insured's business activities at an Insured Location if the Suspension is caused by order of an authorized governmental agency enforcing any law or ordinance regulating communicable diseases and that such portions of the location are declared uninhabitable due to the threat of the spread of communicable disease, prohibiting access to those portions of the Location.

6

Each policy contained a "contamination exclusion" providing in part that

> [t]his Policy excludes the following unless it results from direct physical loss or damage not excluded by this Policy:
>
>> Contamination, and any cost due to Contamination including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy, except as provided by the Radioactive Contamination Coverage of this Policy . . . .

The policies defined "contamination" as "[a]ny condition of [the] property due to the actual presence of any foreign substance, impurity, pollutant, hazardous material, poison, toxin, pathogen or pathogenic organism, bacteria, virus, disease causing or illness causing agent, Fungus, mold or mildew."

The insurance policies issued by AGLIC, AIG, and IFCC were in effect between January 4, 2020 and January 4, 2021.

### B.

On March 9, 2020, Governor Philip D. Murphy issued Executive Order 103. The Executive Order identified COVID-19 as a "contagious, and at times fatal, respiratory disease caused by the SARS-CoV-2 virus." The order acknowledged the rapid growth of the COVID-19 pandemic and the occurrence of confirmed cases in New Jersey and nearby states, and declared that "a Public Health Emergency and State of Emergency exist in the State of

7

New Jersey." Exec. Order No. 103 (Mar. 9, 2020), https://nj.gov/infobank/ eo/056murphy/pdf/EO-103.pdf.

On March 16, 2020, Governor Murphy issued Executive Order 104, which, among other provisions, ordered that "casino gaming floors, including retail sports wagering lounges, and casino concert and entertainment venues" be closed to the public "for as long as this Order remains in effect." Exec. Order No. 104 (Mar. 16, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-104.pdf.

Five days later, Governor Murphy issued Executive Order 107, which superseded Executive Order 104's operative paragraphs and closed to the public "[a]ll recreational and entertainment businesses." One category of businesses closed was "[c]asino gaming floors, including retail sports wagering lounges, and casino concert and entertainment venues." Exec. Order No. 107 (Mar. 21, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-107.pdf.

Ocean Walk asserts that it suspended business operations in accordance with Executive Orders 104 and 107.

On June 26, 2020, Governor Murphy issued Executive Order 157, which went into effect on July 2, 2020. That order authorized the limited reopening of enumerated categories of recreational entertainment businesses, subject to

8

mandated precautions to minimize the spread of the SARS-CoV-2 virus. Exec. Order No. 157 (June 26, 2020), https://nj.gov/infobank/eo/056murphy/pdf/EO-157.pdf. According to its complaint, Ocean Walk reopened its operations on July 2, 2020, in accordance with Executive Order 157.

## C.

On March 23, 2020, Ocean Walk submitted a claim for coverage under the policies issued by AGLIC, AIG, IFCC, and NFMIC. Defendants' adjuster issued a reservation of rights pending the insurers' investigation. After additional correspondence between Ocean Walk and its insurers, AGLIC, AIG, and IFCC agreed to pay $850,000, representing their collective proportionate share of the $1,000,000 sublimit under the Interruption by Communicable Disease amendatory endorsement. The four insurers continued to reserve their rights under other provisions of the policies that Ocean Walk invoked.

On February 24, 2021, AGLIC, AIG, IFCC, and NFMIC denied coverage to Ocean Walk under the remaining provisions.

## II.

## A.

Ocean Walk filed a complaint against AGLIC, AIG, IFCC, and NFMIC. Among other assertions, Ocean Walk alleged that commencing on March 16, 2020, it suffered "the physical loss of use of its property" and a "loss of

9

business revenue" by virtue of "the risks associated with the Coronavirus pandemic, including direct physical loss of or damage to covered property, and in compliance with government guidance and orders." Ocean Walk sought a declaratory judgment, compensatory damages, interest, attorneys' fees, and costs.

Pursuant to Rule 4:6-2(e), all defendants moved to dismiss Ocean Walk's complaint for failure to state a claim. AGLIC, AIG, and IFCC argued that absent actual physical damage attributable to the COVID-19 pandemic, Ocean Walk could not establish that it had sustained a "direct physical loss" of or "direct physical . . . damage" to the property. Defendants further asserted that even if Ocean Walk had sufficiently pled such loss of or damage to its property, each policy's contamination exclusion would bar coverage. NFMIC made similar arguments and also relied on a provision that appeared in its policy but not in the other insurers' policies: an exclusion for certain losses caused by "any pathogenic or poisonous biological . . . substance."

The trial court found the phrase "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location" to be ambiguous. Relying on the Third Circuit's decision in Port Authority of New York & New Jersey v. Affiliated FM Insurance Co., 311 F.3d 226, 235-36 (3d Cir. 2002), and the Appellate Division's decisions in

10

Wakefern Food Corp. v. Liberty Mutual Fire Insurance Co., 406 N.J. Super. 524, 529-41 (App. Div. 2009), and Customized Distribution Services v. Zurich Insurance Co., 373 N.J. Super. 480, 483-88 (App. Div. 2004), the trial court construed the policies to provide coverage "if the property becomes unusable for its intended purpose, whether or not the property is altered" by the SARS-CoV-2 virus. The court concluded that Ocean Walk had adequately pled facts supporting a finding of "direct physical loss" of or "direct physical . . . damage" to its property because it had alleged that due to the SARS-CoV-2 virus, it was unable to "operate its gaming floor and hotel rooms" or to "operate according to its essential functions."

Invoking our decision in Nav-Its, Inc. v. Selective Insurance Co. of America, 183 N.J. 110, 118-24 (2005), the trial court ruled that the contamination exclusion in the policies constituted a "pollution exclusion[]" that should be viewed as "substantially directed at traditional environmental and industrial damages." The court found the contamination exclusion inapplicable to the claims asserted in this matter.

The trial court accordingly concluded that Ocean Walk had sufficiently pled facts supporting coverage under the policies issued by AGLIC, AIG, and IFCC, and denied those insurers' motions to dismiss. It granted NFMIC's

11

motion to dismiss, based solely on the endorsement in NFMIC's policy regarding "any pathogenic or poisonous biological . . . substance."

B.

AGLIC, AIG, and IFCC appealed the trial court's decision denying their motion to dismiss pursuant to Rule 4:6-2(e).[1] The Appellate Division granted amicus curiae status to the Insurance Council of New Jersey and American Property Casualty Insurance Association, jointly represented, and to United Policyholders.

In an unpublished decision, the Appellate Division reversed the trial court's denial of the motions to dismiss filed by AGLIC, AIG, and IFCC.

The Appellate Division found that the presence of SARS-CoV-2 in Ocean Walk's facilities and the government-mandated closure of those facilities did not give rise to a "direct physical loss" of or "direct physical . . . damage" to the property as the policies required. The appellate court concluded that Ocean Walk had not pled that it suffered damage to its equipment or property that caused the property to lose its physical capacity to operate. It determined that Ocean Walk failed to allege a physical alteration to its property that rendered the property too dangerous to enter.

---

[1] Ocean Walk did not appeal the trial court's grant of NFMIC's motion to dismiss.

The Appellate Division held that instead, it was Governor Murphy's executive orders that required Ocean Walk to close its gaming floor, sports wagering lounges, and entertainment venues. It noted that Ocean Walk had maintained limited operations in some of its facilities as the government orders permitted and found that, absent those orders, Ocean Walk would have been able to continue operating its casino and other facilities. Viewing Ocean Walk's claims to turn entirely on the language of the insurance policies, the appellate court held that further discovery could not render those claims viable. The Appellate Division held that even if Ocean Walk had sufficiently pled that the SARS-CoV-2 virus had caused an actual or imminent physical loss or damage to its property, the contamination exclusion in each policy would bar coverage.

Finally, the appellate court adopted the detailed reasoning and holdings in its decision affirming the dismissal of similar coverage claims in Mac Property Group LLC v. Selective Fire & Casualty Insurance Co., 473 N.J. Super. 1, 19-27 (App. Div. 2022).

The Appellate Division remanded the matter to the trial court for the entry of an order dismissing Ocean Walk's complaint as to all defendants.

13

## C.

We granted Ocean Walk's petition for certification. 252 N.J. 606 (2023). We maintained the amicus curiae status of the Insurance Council of New Jersey, the American Property Casualty Insurance Association, and United Policyholders. We also granted the amicus curiae applications of the National Association of Mutual Insurance Companies, the Restaurant Law Center, the Medical Society of New Jersey, and the New Jersey Association for Justice.

## III.

## A.

Ocean Walk urges that we reverse the Appellate Division's determination. It argues that it pled sufficient facts to support its contention that the SARS-CoV-2 virus caused "direct physical loss" of property or "direct physical . . . damage" to property, noting that the trial court properly denied defendants' motions to dismiss. Ocean Walk contends that the contamination exclusion constitutes a pollution exclusion limited to environmental claims, and is thus inapplicable to this appeal.

## B.

AGLIC, AIG, and IFCC argue that the Appellate Division's decision was correct and should be affirmed. They contend that the COVID-19

14

pandemic's interference with Ocean Walk's use of its property did not constitute either a direct "physical loss of" or direct "physical . . . damage" to Ocean Walk's property. They note that the Appellate Division's holding on that question is consistent with the decisions of nearly every federal and state court that has considered the issue. AGLIC, AIG, and IFCC argue that the contamination exclusion in the policies bars coverage.

### C.

Amicus curiae United Policyholders asserts that a full evidentiary record should be developed before a court determines whether to dismiss Ocean Walk's coverage claims.

### D.

Amicus curiae New Jersey Restaurant Law Center argues that the Appellate Division misapplied the pleading standard when it granted defendants' motion to dismiss, and that the disputed policies should be held to cover Ocean Walk's claims.

### E.

Amicus curiae the New Jersey Association for Justice contends that the Appellate Division improperly made factual determinations about a complex scientific issue at the pleading stage, and argues that this Court should reverse the appellate court's decision.

15

F.

Amicus curiae Medical Society of New Jersey takes no position as to the insurance coverage issue before us. It states, however, that the Appellate Division's decision wrongly suggests that SARS-CoV-2 is easily removed from indoor surfaces by household cleaning and highlights the difficulty that may be encountered in eliminating the virus from such surfaces.

G.

Amici curiae Insurance Council of New Jersey, American Property Casualty Insurance Association, and National Association of Mutual Insurance Companies, jointly represented, argue that the policy language on which Ocean Walk relies does not support coverage in this case, that the Court's adoption of Ocean Walk's arguments would destabilize the insurance industry, and that nearly every appellate court that has considered the issues presented in this appeal has found no coverage for the claims asserted here.

IV.

A.

1.

We review de novo the trial court's denial of defendants' motion to dismiss under Rule 4:6-2(e), affording no special deference to the legal determinations of the trial court or Appellate Division. Baskin v. P.C. Richard

16

& Son, LLC, 246 N.J. 157, 171 (2021); Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019).

In our review of the trial court's application of Rule 4:6-2(e), we apply the standard that governs such motions. MasTec Renewables Constr. Co. v. SunLight Gen. Mercer Solar, LLC, 462 N.J. Super. 297, 309 (App. Div. 2020). "In evaluating motions to dismiss, courts consider 'allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.'" Myska v. N.J. Mfrs. Ins. Co., 440 N.J. Super. 458, 482 (App. Div. 2015) (quoting Banco Popular N. Am. v. Gandi, 184 N.J. 161, 183 (2005)).

In its inquiry, the court must "search[] the complaint in depth and with liberality to ascertain whether the fundament of a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989) (quoting Di Cristofaro v. Laurel Grove Mem'l Park, 43 N.J. Super. 244, 252 (App. Div. 1957)). The court's review is "undertaken with a generous and hospitable approach." Dimitrakopoulos, 237 N.J. at 107 (quoting Printing Mart, 116 N.J. at 746). Nonetheless, "the essential facts supporting plaintiff's cause of action must be presented in order for the claim to survive; conclusory allegations are insufficient in that regard." Scheidt v.

17

DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012) (citing Printing Mart, 116 N.J. at 768). "[I]f the complaint states no claim that supports relief, and discovery will not give rise to such a claim, the action should be dismissed." Dimitrakopoulos, 237 N.J. at 107-08.

That principle applies in the insurance coverage setting, in which a complaint seeking coverage may be dismissed under Rule 4:6-2(e) if the factual allegations, viewed in accordance with the Printing Mart standard, do not support a finding that the plaintiff is entitled to coverage under the terms of the insurance policy. See, e.g., Mac Prop. Grp., 473 N.J. Super. at 16-34 (construing the defendants' insurance policies not to provide coverage); Kieffer v. High Point Ins. Co., 422 N.J. Super. 38, 43-51 (App. Div. 2011) (affirming the trial court's grant of a motion to dismiss the plaintiffs' coverage claims).

2.

A trial court's interpretation of an insurance policy's terms is a legal determination, not a factual inquiry, and is accordingly reviewed de novo. Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy, 210 N.J. 597, 605 (2012).

An insurance policy "will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled," with undefined

18

terms construed in accordance with their "plain and ordinary meaning." Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010). "If the language is clear, that is the end of the inquiry," and courts will not "'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008) (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273 (2001)). We have long recognized "the basic notion that the premium paid by the insured does not buy coverage for all property damage but only for that type of damage provided for in the policy." Weedo v. Stone-E-Brick, Inc., 81 N.J. 233, 237 (1979).

Exclusionary clauses are "presumed valid if they are 'specific, plain, clear, prominent and not contrary to public policy.'" Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 552 (2022) (quoting Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 528 (2012)). Policy exclusions "are typically construed narrowly with the onus 'on the insurer to bring the case within the exclusion.'" Mem'l Props., 210 N.J. at 528 (quoting Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41 (1998)). Nonetheless, if the terms of an exclusion are clear and unambiguous, we "should not engage in a strained construction to support the imposition of liability." Longobardi v. Chubb Ins. Co. of N.J., 121 N.J. 530, 537 (1990).

19

B.

1.

Viewing the complaint in accordance with the "generous and hospitable approach" prescribed in Printing Mart, 116 N.J. at 746, we first consider Ocean Walk's contention that it alleged facts supporting a finding of a "direct physical loss of or damage caused by a Covered Cause of Loss to Covered Property, at an Insured Location."

Although the words "loss," "damage," "direct," and "physical" are undefined in the insurance policies, the dictionary definitions of those terms shed light on the parties' intent when they agreed to that policy language.

"Loss" is defined as "the state or fact of being destroyed or placed beyond recovery:  destruction, ruin," and "the act or fact of losing; failure to keep possession."  Webster's Third New International Dictionary (Unabridged) 1338 (2002) (Webster's Third).

"Damage" is defined to mean "loss due to injury:  injury or harm to person, property, or reputation," id. at 571, and "loss or injury to person or property; esp. physical harm that is done to something or to part of someone's body," Black's Law Dictionary 488 (11th ed. 2019).

"Direct" is defined to denote "stemming immediately from a source." Webster's Third, at 640.

20

"Physical" means "[o]f, relating to, or involving material things; pertaining to real, tangible objects," Black's Law Dictionary, at 1386, and "of or relating to natural or material things as opposed to things mental, moral, spiritual or imaginary:  material, natural," Webster's Third, at 1706.

Applying those definitions, the phrase "direct physical loss of . . . property" clearly denotes the destruction of the property or a physical change to the property that renders it unusable or uninhabitable.  In Wilson v. USI Insurance Service LLC, the Third Circuit defined the policy language "direct physical loss . . . of property" to mean "a failure to maintain tangible possession of the structure."  57 F.4th 131, 142 (3d Cir. 2023).  In Mac Property, the Appellate Division found that the policy required the insureds to prove that their properties were rendered physically incapable of operating or too dangerous to enter.  473 N.J. Super. at 23.

As the Third Circuit explained in the asbestos setting of Port Authority,

> [w]hen the presence of large quantities of asbestos in the air of a building is such as to make the structure uninhabitable and unusable, then there has been a distinct loss to its owner.  However, if asbestos is present in components of a structure, but is not in such form or quantity as to make the building unusable, the owner has not suffered a loss.
>
> [311 F.3d at 236.]

21

Several federal and state courts have similarly construed a "direct physical loss" of property.  See, e.g., Sandy Point Dental, P.C. v. Cincinnati Ins. Co., 20 F.4th 327, 337 (7th Cir. 2021) (stating that "direct physical loss" requires a "physical alteration to property" or "an access- or use-deprivation so substantial as to constitute a physical dispossession"); Goodwill Indus. of Cent. Okla., Inc. v. Phila. Indem. Ins. Co., 21 F.4th 704, 710 (10th Cir. 2021) (holding that "a 'direct physical loss' requires an immediate and perceptible destruction or deprivation of property"); Conn. Dermatology Grp., P.C. v. Twin City Fire Ins. Co., 288 A.3d 187, 198 (Conn. 2023) ("[T]he phrase 'direct physical loss of . . . [p]roperty' clearly and unambiguously means that there must be some physical, tangible alteration to or deprivation of the property that renders it physically unusable or inaccessible."  (alterations in original)).

The policy term "direct physical . . . damage" to property denotes "a distinct, demonstrable, and physical alteration of [the property's] structure" that renders the property useless or uninhabitable.  Wilson, 57 F.4th at 142-43 (internal quotation marks omitted) (quoting Port Auth., 311 F.3d at 235); see also 10012 Holdings, Inc. v. Sentinel Ins. Co., 21 F.4th 216, 220-22 (2d Cir. 2021) (stating that "'physical damage . . .' do[es] not extend to mere loss of use of a premises, where there has been no physical damage to such premises,"

22

and that the term "instead require[s] actual physical loss of or damage to the insured's property"). "Direct physical . . . damage" to property is thus held to require a physical change to the property, not simply the temporary unavailability of the property to serve its intended purpose.

Several federal and state courts have accordingly construed the policy language "direct physical loss" of property or "direct physical . . . damage" to property to denote either the property's destruction or its alteration rendering it unusable or uninhabitable, and have declined to extend that language beyond those parameters. See, e.g., Uncork & Create LLC v. Cincinnati Ins. Co., 27 F.4th 926, 928 (4th Cir. 2022) ("[U]nder West Virginia law, the policy language requiring a 'physical loss' or 'physical damage' unambiguously covers only losses caused by, or relating to, material destruction or material harm to the covered property."); Schleicher & Stebbins Hotels, LLC v. Starr Surplus Lines Ins. Co., 302 A.3d 67, 77 (N.H. 2023) ("[D]irect physical loss or damage cannot be interpreted to apply 'whenever property cannot be used for its intended purpose.'" (quoting Mellin v. N. Sec. Ins. Co., 115 A.3d 799, 804 (N.H. 2015))); Cherokee Nation v. Lexington Ins. Co., 521 P.3d 1261, 1265 (Okla. 2022) (construing the phrase "direct physical loss or damage . . . to real and/or personal property" to require "immediate and actual, material, or tangible deprivation or destruction of property" (emphasis omitted)); Sullivan

23

Mgmt., LLC v. Fireman's Ins. Co., 879 S.E.2d 742, 744 (S.C. 2022) ("[I]n order to trigger coverage, the loss or damage must be more than mere loss of use or economic loss; instead there must be a 'physical alteration, destruction, or permanent dispossession of property.'").

The policies' "time element" provisions addressing business interruption underscore that interpretation of the policies' terms. Those provisions cover business interruption under certain conditions for the period during which the insured's business is suspended so that property can be repaired or replaced; that coverage extends from the time the "loss or damage" is sustained to the time when, "with due diligence and dispatch," the building and equipment "could be repaired or replaced, and made ready for operations under the same or equivalent physical and operating conditions that existed prior to the damage." As the Appellate Division noted in Mac Property, those provisions would be meaningless if "there has been no physical damage to property that would require repairs, rebuilding, or replacement." 473 N.J. Super. at 21-22; accord Sandy Point, 20 F.4th at 333 (stating in regard to a similar provision that "[w]ithout a physical alteration to property, there would be nothing to repair, rebuild, or replace"); Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am., 15 F.4th 885, 892 (9th Cir. 2021); Newman Myers Kreines Gross Harris, P.C. v. Great N. Ins. Co., 17 F. Supp. 3d 323, 325 (S.D.N.Y. 2014); Conn.

24

Dermatology, 288 A.3d at 197; Verveine Corp. v. Strathmore Ins. Co., 184 N.E.3d 1266, 1275 (Mass. 2022).

We concur with the determinations of those federal and state courts. Based on the plain terms of the policies, we conclude that in order to show a "direct physical loss" of its property or "direct physical . . . damage" to its property under the policy language at issue, Ocean Walk was required to demonstrate that its property was destroyed or altered in a manner that rendered it unusable or uninhabitable.

2.

The facts pled by Ocean Walk fall short of that mark.

In its complaint, Ocean Walk defines the "direct physical loss" of its property and the "direct physical . . . damage to its property" to be the "actual and/or threatened presence of Coronavirus particles" on its premises. It alleges that "in or around March 16, 2020, and in compliance with governmental directives," it was "forced to close to the public because of the local and nationwide risks and effects of the Coronavirus pandemic." Ocean Walk acknowledges that it maintained limited operations in some of its physical facilities and continued to conduct its online gambling business, as permitted under the executive orders. It states that "on July 2, 2020, in compliance with [Executive Order] 157, Ocean Casino Resort reopened for

25

business" but that its operations "continued to be restricted or limited by the risks associated with the Coronavirus pandemic as well as the related governmental directives," including a continued ban on indoor dining and drinking.

Assuming Ocean Walk's factual allegations to be true in accordance with <u>Printing Mart</u>, 116 N.J. at 746, Ocean Walk has not alleged facts that would support a finding of a "direct physical loss" of its property or "direct physical . . . damage" to its property. At most, it has alleged that it sustained a loss of business during the COVID-19 government-mandated suspension of business operations because it was not permitted to use its property as it would otherwise have done.[2] As the Third Circuit observed with respect to the complaint dismissed in <u>Wilson</u> -- in which the plaintiff businesses "lost the

---

[2] Ocean Walk invokes <u>Wakefern</u>, 406 N.J. Super. at 529 and <u>Customized Distribution</u>, 373 N.J. Super. at 483-88, for the proposition that it sustained a "direct physical loss" or "direct physical . . . damage" because its property could not be used for its essential function while the government suspension orders were in effect. Its reliance on those decisions is misplaced. In <u>Wakefern</u>, the insurance policy at issue covered "consequential loss or damage resulting from interruption of . . . [p]ower" resulting "[f]rom physical damage by a peril insured against." 406 N.J. Super. at 531. The insured's losses fit exactly within that provision, and the Appellate Division expressly stated that it would "reach a different result if, for example, a governmental agency had ordered that the power be shut off to conserve electricity." <u>Id.</u> at 531-32; 540 n.7. <u>Customized Distribution</u> involved a third-party liability insurance policy issued to a warehouse operator that allegedly mishandled a manufacturer's products, rendering them unsuitable for sale. 373 N.J. Super. at 490-91. Neither decision addressed a setting comparable to the circumstances here.

26

ability to use their properties for their intended business purposes" by virtue of government orders -- such an allegation "is completely divorced from the physical condition of the premises," given that the properties were "intact and functional" and were "not destroyed in whole or in part." 57 F.4th at 142-43. The Appellate Division rebuffed a similar argument in Mac Property, noting that the insured businesses "would have been able to continue functioning as a dine-in restaurant, bakery, childcare and learning center, or gym without interruption had Governor Murphy not issued his [executive orders]," given that none of the facilities needed repairs due to damage or required relocation. 473 N.J. Super. at 23. Here, absent the executive orders, Ocean Walk would have been able to use its property for casino and other entertainment functions with no suspension of its operations.

Our holding that Ocean Walk's COVID-19 allegations do not satisfy the policy language comports with the vast majority of decisions by federal and state appellate courts that have addressed that issue. See, e.g., Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co., 22 F.4th 450, 458 (5th Cir. 2022) ("Because the civil authority orders prohibiting dine-in services at restaurants did not tangibly alter [plaintiff's] restaurants . . . the policy does not provide coverage . . . ."); Schleicher, 302 A.3d at 77 (reasoning that because SARS-CoV-2 "poses a risk to human health" and "the policies insure

property, not people," "[t]he presence of [coronavirus] on property . . . does not cause 'direct physical loss of or damage to property'"); Hartford Fire Ins. Co. v. Moda, LLC, 288 A.3d 206, 212 (Conn. 2023) ("Contamination with the SARS-CoV-2 virus . . . is not sufficient to establish that [insured's property was] physically lost or damaged . . . ."); Starr Surplus Lines Ins. Co. v. Eighth Jud. Dist. Ct. in & for Cnty. of Clark, 535 P.3d 254, 263 (Nev. 2023) ("[T]he claimed losses stemming from the physical presence of [SARS-CoV-2] do not fall within the ordinary meaning of the policy's direct physical loss or damage coverage as a matter of law . . . ." (emphasis omitted)); Colectivo Coffee Roasters, Inc. v. Soc'y Ins., 974 N.W.2d 442, 444, 448 (Wis. 2022) (holding that an insured's "inability to use its dining space for in-person dining because of the pandemic and related government restrictions [does not] constitute[] a direct physical loss of or damage to its property" and noting that "the danger of the virus is to people, . . . not to the real property itself" (internal quotation marks omitted)); accord Sandy Point, 20 F.4th at 337; Goodwill Indus., 21 F.4th at 710; Uncork, 27 F.4th at 933; Cherokee Nation, 521 P.3d at 1270; Sullivan Mgmt., 879 S.E.2d at 745-46; Conn. Dermatology, 288 A.3d at 206.[3]

---

[3] One state appellate court, the Vermont Supreme Court, has held to the contrary. See Huntington Ingalls Indus., Inc. v. Ace Am. Ins. Co., 287 A.3d 515, 534 (Vt. 2022).

In short, Ocean Walk's factual allegations about the suspension and resumption of its business activities, accepted as true for purposes of defendants' motion, do not support a finding that it is entitled to insurance coverage for "direct physical loss" of or "direct physical . . . damage" to its property. We agree with the Appellate Division that Ocean Walk did not allege facts supporting coverage under the policy language in dispute, and that the deficiency in its allegations cannot be remedied by discovery.[4]

### C.

Although it is not strictly necessary given our conclusion that Ocean Walk did not allege facts to establish a "direct physical loss" of or "direct physical . . . damage" to its property, we nonetheless briefly address Ocean Walk's argument that the contamination exclusion in the policies issued by AGLIC, AIG, and IFCC does not apply here.

In support of that argument, Ocean Walk invokes the policies' definition of the term "contaminant." In the policies, "contaminant" is defined as "[a]ny solid, liquid, gaseous, thermal or other irritant, pollutant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, alkalis,

---

[4] Although we affirm the Appellate Division's analysis of the coverage provisions, we do not adopt its comment that the SARS-CoV-2 virus can easily be eliminated from surfaces by household cleaning. We make no determination on that issue here.

chemicals, waste . . . , asbestos, ammonia, other hazardous substances, Fungus or Spores."  Noting that the definition of "contaminant" does not include a "virus" or "pathogen or pathogenic organism," Ocean Walk urges us to find that the contamination exclusion does not apply to its coverage claim.

That argument is unpersuasive.  The definition of "contaminant" has no bearing on this appeal.  In the policies, the word "contaminant" is used only in provisions not relevant here, such as a provision addressing coverage in certain settings for "the reasonable and necessary cost for the cleanup, removal and disposal of the actual not suspected presence of [c]ontaminant(s) from uninsured property."

The word "contaminant" appears nowhere in the policies' contamination exclusion.  That exclusion instead provides that, subject to an exception for "radioactive contamination," the policies do not cover "[c]ontamination" and "any cost due to [c]ontamination" -- including "the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy" -- unless the contamination "results from direct physical loss or damage not excluded" by the policy.[5]  The policies define "contamination" to include "any

_____

[5]  We reject Ocean Walk's contention that AGLIC's "Amendatory Endorsement -- Louisiana," excluding from coverage "[c]ontamination or asbestos, and any cost due to [c]ontamination or asbestos including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy," applies here.  As the Appellate Division noted,

30

condition of the property due to the actual presence" of any "pathogen or pathogenic organism," or "virus." As Ocean Walk alleges in its complaint, its claim arises from a "highly contagious and easily transmitted human pathogen." The presence of SARS-CoV-2 in Ocean Walk's facilities falls squarely within the description of "contamination" in the policies.

Ocean Walk also asserts that the contamination exclusion should be read to exclude from coverage only environmental pollution risks, not the risk presented by a virus such as SARS-CoV-2. It relies on this Court's decision in Nav-Its, 183 N.J. at 118-24, for the proposition that the contamination exclusion should be read as nothing more than a "pollution exclusion" irrelevant to its coverage claim.

That argument is similarly unpersuasive. Our decision in Nav-Its does not govern this appeal.

First, the policy exclusion at issue in Nav-Its was exclusively a "pollution exclusion." Id. at 115. We determined that the provision disputed in Nav-Its was intended to create "a broad exclusion for traditional environmentally related damages," id. at 122-23, but that it did not exclude coverage for the specific claim at issue in that case, which was brought by an

the "Amendatory Endorsement -- Louisiana" is irrelevant to this appeal, which solely concerns property located in New Jersey.

individual who alleged exposure to toxic fumes during a floor coating and sealant project conducted by the insured, id. at 113-15. Here, in contrast, the contamination exclusion in the policies at issue bars coverage not only for certain claims premised on loss or damage caused by a "pollutant" but also for certain claims premised on loss or damage resulting from other causes. Those causes include the presence of a "virus" or a "pathogen or pathogenic organism" on covered property. The exclusion's terms do not support the limited reading that Ocean Walk advocates.

Further, we found significant in Nav-Its that the defendant insurers and their representatives had assured New Jersey regulators, in seeking approval for the pollution exclusion, that the exclusion would not operate as an absolute bar to coverage for an insured's products and completed operations. Id. at 124. In holding the exclusion inapplicable, we expressly rejected the defendants' attempt to depart from those representations in denying the policyholder coverage. See ibid. Here, there is no analogous contention that insurance regulators were misled by the defendant insurers or their representatives about the import of the contamination exclusion.

In sum, nothing in our decision in Nav-Its warrants the interpretation of the contamination exclusion urged by Ocean Walk -- an interpretation contrary to the policies' plain terms.

Assuming the truth of Ocean Walk's factual allegations in accordance with <u>Printing Mart</u>, 116 N.J. at 746, we conclude that those allegations fall squarely within the contamination exclusion in defendants' policies, and that the exclusion bars coverage here.

V.

We affirm the judgment of the Appellate Division and remand the matter to the trial court for entry of an order dismissing with prejudice Ocean Walk's complaint.


CHIEF JUSTICE RABNER and JUSTICES PIERRE-LOUIS, WAINER APTER, and NORIEGA join in JUSTICE PATTERSON's opinion. JUSTICES SOLOMON and FASCIALE did not participate.