**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2555-23

JJ BADA 464 OPERATING
CORP., d/b/a BADA STORY
RESTAURANT,

     Plaintiff-Appellant,

v.

ADVANCE SECURITY
SYSTEMS, A DIVISION OF
U.S. SECURITY SERVICES,
INC., a/k/a ADVANCED
SECURITY SYSTEMS, A DIVISION
OF U.S. SECURITY SERVICES,
INC.,

     Defendant-Respondent.

_____

Submitted September 8, 2025 – Decided September 15, 2025

Before Judges Natali and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-3990-22.

Michael S. Kimm, attorney for appellant.

A-2555-23

Riker, Danzig, LLP, attorneys for respondents (Edwin F. Chociey, Jr., of counsel and on the brief; Siobhan A. Neary, on the brief).

PER CURIAM

Plaintiff JJ Bada 464 Operating Corp., d/b/a Bada Story Restaurant (Bada), appeals from three orders, the effect of which dismissed its complaint against Advanced Security Systems, a division of U.S. Security Services, Inc. (Advanced). In that complaint, Bada alleged Advanced breached the parties' contract and the implied covenant of good faith and fair dealing and violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-2. We affirm in part and remand in part.

I.

We detail only those facts and portions of the procedural history necessary to resolve the issues before us. In December 2019, Bada leased space to operate a restaurant. Prior to its tenancy, Advanced installed a commercial fire alarm and provided monthly monitoring support for the previous tenant. Bada informed Advanced it wished to continue the monitoring arrangement and subsequently paid for the monitoring service in 2020, 2021, and part of 2022.

Bada provided its business phone number to Advanced and the name and number of its outside counsel as its emergency contact. According to Bada, it

routinely experienced problems with the fire alarm and monitoring service. It specifically alleged the "equipment routinely triggered false alarms . . . with absolutely no underlying reason (such as smoke or fire)."

Instead of first contacting its business number, Bada claimed the monitoring service routinely called its outside counsel with "emergency 'fire calls.'" These alleged "false alarms" frequently caused needless evacuations of the restaurant during business hours and the unnecessary dispatch of emergency services which purportedly cost the restaurant substantial time and money.

To rectify the problem, Advanced allegedly recommended upgrades to the system. According to Bada, it incurred substantial expense in modifying and upgrading the fire alarm consistent with Advanced's recommendations which failed to solve the problem, as the restaurant continued to experience disruptive false alarms. In approximately May 2020, Bada canceled the monitoring service and enrolled in a new service. Since the switch, Bada claimed "the fire alarm system has been trouble-free."

In its three-count complaint, Bada alleged Advanced breached the parties' agreement and the implied covenant of good faith and fair dealing based on Advanced's purported failure to ensure the fire alarm system properly functioned. Bada contended Advanced violated the CFA because it held "itself

3

out to be an alarm monitoring company" but "failed to properly discharge its role" and engaged in "unconscionable and 'fraudulent trade practices'" due to its sale of defective products and services.

Advanced moved to dismiss the complaint under Rule 4:6-2(e), and as to Bada's CFA claim argued "even accepting all of the allegations as true . . . there are no allegations that . . . Advance[d] engaged in any misleading or deceptive conduct, or any conduct that could possibly constitute an unconscionable commercial practice." Advanced further argued Bada was not the purchaser of the fire alarm, it voluntarily continued to use service and even if Advanced recommended Bada upgrade the system, nothing about its purported recommendation was fraudulent or misleading. Advanced also contended that Bada's CFA claim was deficient because it did not comply with Rule 4:5-8(a), as "the complaint completely fails to specify the nature of Advance[d]'s alleged fraudulent conduct to the extent that fraudulent conduct could even be discerned from the complaint."

Advanced maintained Bada's breach of contract claim should be dismissed because Bada did not purchase the alarm system, Advanced contended Bada could not assert a breach of "contract claim arising from the sale of the system," nor did it provide the terms of any service or monitoring contracts that Advanced

allegedly violated. With respect to Bada's breach of the implied duty of good faith and fair dealing claim, Advanced maintained the "complaint is completely devoid of any allegation that Advance[d] had any bad motive or intention in entering any contracts with plaintiff" and the basis for the claim is impermissibly duplicative as Bada's breach of contract claim.

The court granted, in part, Advanced's application, explained its decision in a comprehensive sixteen-page written opinion, and issued a conforming order on December 27, 2022. The court dismissed Bada's CFA claim without prejudice and concluded Bada "failed to set forth with sufficient specificity the unlawful conduct, any fraud or misrepresentation, to which loss is causally connected." It explained "[s]imply alleging there was an 'unconscionable business practice of holding itself [out] as an alarm monitoring company' is not sufficient" and "alleging a defective product, without factual identification, is not enough" as a "CFA violation . . . must be set forth with some specificity."

The court rejected Advanced's request to dismiss the remaining counts in the complaint because it found "the facts presented provide a sufficient basis to support a claim of breach of the contract by alleging [a] failure to provide appropriate services, failure to provide contracted equipment, and failure to attend to the faulty alarms, as supposedly agreed upon by the parties." The court

also determined the facts pled, i.e., that Advanced "fail[ed] to attend to the faulty system while accepting monies and recommending additional products or upgrades[,]" were sufficient to support a claim for breach of the covenant of good faith and fair dealing.

Advanced subsequently filed a motion for summary judgment and supported its application with a Rule 4:46-2(a) statement of material facts which detailed the instances in which the local fire department responded to the restaurant, for reasons unrelated to purported failures of the monitoring system. Bada opposed the motion and supported its opposition with a certification of counsel, and a Rule 4:46-2(b) counterstatement of material facts.

The court granted Advanced's summary judgment application with respect to Bada's implied duty of good faith and fair dealing claim, denied summary judgment as to its breach of contract claim, explained its decision in an oral opinion, and issued an appropriate order on January 12, 2024. The court found there was "simply no evidence before the [c]ourt that indicates that there was any breach of covenant of good faith and fair dealing with regard to the formation and/or performance of th[e] contract." It explained Advanced "tried to perform" but that a breach of good faith and fair dealing claim "simply cannot be a repeat of the same allegations to support the breach of contract."

A-2555-23

As to the breach of contract claim, the court found it was undisputed "there was a contractual relationship . . . between . . . Bada and Advance[d] . . . to provide, in part, . . . fire security system services to . . . Bada," the local fire department was dispatched on at least two occasions that were "indicated to be false alarms," and Advanced serviced the alarm to rectify any issues. Based on the motion record, the court concluded there was a genuine dispute of material fact with respect to whether the fire alarm's "issues were . . . resolved" which would benefit from the testimony of plaintiff's witnesses and the "breach of contract issue . . . should be presented to a trier of fact for ultimate determination."

Advanced moved for reconsideration. The court considered the application without oral argument and granted Advanced's application. It accordingly vacated that portion of the summary judgment order with respect to the breach of contract claim and dismissed the claim with prejudice. In support of its decision, the court issued a March 11, 2024 order that included a notation explaining, "[o]pposition untimely. Moreover, opposition cites to the wrong rule, as reconsideration is of an interlocutory order (not a final order) and contains no substantive opposition whatsoever." Based on the record before us,

7

it does not appear the court otherwise explained the factual or legal basis for its decision. This appeal followed.

II.

Bada contends the court erred in dismissing its CFA claim because the "complaint provided ample notice" as well as the "basis of invoking the CFA." It claims paragraphs three through sixteen of the complaint sufficiently alleged Advanced "engaged in unconscionable conduct in the sale of its repair service and alarm monitoring service, by deceptive, false representations that caused [Bada]'s reliance and resulted in numerous false fire alarms disruptive to the business, even after [Advanced] allegedly 'repaired' the problem."

Next, Bada argues that Advanced's "suggest[ion] that alleging the 'particulars of fraud' requires a doctoral dissertation type of pleading" is unnecessary as "scienter and intent to deceive are not required elements of pleading, and thus […] not required." Bada maintains the "complaint rather plainly states that [Advanced]'s actions were 'unconscionable' business practice[s]," sufficient to invoke the CFA and thus, because the "complaint and [] all favorable inferences must be deemed true, [Advanced]'s attempt to re-characterize the allegations should have been rejected." Finally, Bada claims Advanced's "statements that it had the professional skills to repair and maintain

the fire alarm system so as to protect a restaurant's operations and avoid false alarms, if proved false, shows unconscionable business-related acts" and thus "glossing over these facts warrants reversal and remand."

We first address, sua sponte, a threshold issue: the interlocutory nature of the orders under review. As noted, the court dismissed Bada's CFA claim without prejudice, presumably so Bada could replead the claim. See Mason v. Nabisco Brands, Inc., 233 N.J. Super. 263, 267-68 (App. Div. 1989). Bada, however, never replead that claim and as such, the court never addressed that claim on the merits and hence never issued a final judgment.

Rule 2:2-3(a)(1) permits an appeal as of right to our court only from a final judgment. "To be a final judgment, an order generally must 'dispose of all claims against all parties.'" Janicky v. Point Bay Fuel, Inc., 396 N.J. Super. 545, 549 (App. Div. 2007) (quoting S.N. Golden Estates, Inc. v. Cont'l Cas. Co., 317 N.J. Super. 82, 87 (App. Div. 1998)). "If an order is not a final judgment, a party must be granted leave to appeal by the Appellate Division," Janicky, 396 N.J. Super. at 550, unless the order falls within the limited class of interlocutory orders that may be appealed as of right, see Rule 2:2-3(a)(3). The order dismissing Bada's CFA claim without prejudice is not a final order for which an appeal of right may be taken under Rule 2:2-3(a)(3).

Instead, Bada has challenged an interlocutory order without leave of court. See Grow Co. v. Chokshi, 403 N.J. Super. 443, 460 (App. Div. 2008) (explaining a "dismissal without prejudice of unadjudicated claims that have not been concluded in fact but are left to be resurrected in a new suit" does not constitute a final judgment allowing appellate review as of right); CPC Int'l, Inc. v. Hartford Accident & Indem. Co., 316 N.J. Super. 351, 366 (App. Div. 1998) (finding a dismissal of a claim without prejudice is not a means "to foist jurisdiction [over an interlocutory order] upon this court").

In appropriate cases, the court may grant leave to appeal nunc pro tunc. R. 2:4-4(b)(2); see e.g., Yuhas v. Mudge, 129 N.J. Super. 207, 209 (App. Div. 1974) (granting leave to appeal nunc pro tunc "in the interest of prompt disposition of the matter"). However, such relief is not automatic and should not be presumed as granting leave to appeal nunc pro tunc is "most extraordinary relief[.]" Hallowell v. Am. Honda Motor Co., 297 N.J. Super. 314, 318 (App. Div. 1997) (quoting Frantzen v. Howard, 132 N.J. Super. 226, 227-28 (App. Div. 1975)).

Under the circumstances, we have concluded the most appropriate course is to grant leave to appeal nunc pro tunc to address the issues raised by this appeal. We grant this extraordinary relief for the following reasons.

10

First, we do so to avoid any further delay in the prosecution of this matter and the remanded proceedings and to address, to the extent possible on the current record, the merits of the court's rulings. Second, we choose this path because neither party has contended that Bada improperly filed a direct appeal from an interlocutory order, and the parties have fully addressed the merits. Finally, we understand the Clerk's office advised the parties the appeal would proceed despite both the interlocutory nature of the December 22, 2022 order, and Bada's incorrect statement in its Notice of Appeal regarding the finality of the court's orders.

We next address the merits of the court's order dismissing without prejudice Bada's CFA claim by addressing the applicable procedural and substantive legal principles. "Rule 4:6-2(e) motions to dismiss for failure to state a claim upon which relief can be granted are reviewed de novo." Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). When considering a Rule 4:6-2(e) motion, "[a] reviewing court must examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Ibid. (quoting Dimitrakopoulos, 237 N.J. at 107). "The essential test [for determining

A-2555-23

the adequacy of a pleading] is simply 'whether a cause of action is "suggested" by the facts.'" Green v. Morgan Props., 215 N.J. 431, 451-52 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)). "At this preliminary stage of the litigation the [c]ourt is not concerned with the ability of [the] plaintiffs to prove the allegation contained in the complaint." Printing Mart-Morristown, 116 N.J. at 746.

To survive a Rule 4:6-2(e) motion, the plaintiff must present "the essential facts supporting plaintiff's cause of action [, and] . . . conclusory allegations are insufficient in that regard." Scheidt v. DRS Techs., Inc., 424 N.J. Super. 188, 193 (App. Div. 2012) (citing Printing Mart-Morristown, 116 N.J. at 768). "It is not enough for [the] plaintiffs to assert . . . that any essential facts that the court may find lacking can be dredged up in discovery." Printing Mart-Morristown, 116 N.J. at 768.

"To prevail on a CFA claim, a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" Zaman v. Felton, 219 N.J. 199, 222 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)). Under the CFA, an unlawful practice is defined as:

> The act, use or employment by any person of any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged . . . .
>
> [N.J.S.A. 56:8-2.]

Additionally, when a plaintiff alleges fraud—under the CFA or the common law—the heightened pleading requirement under Rule 4:5-8(a) mandates that "all allegations of misrepresentation, fraud, mistake, breach of trust, willful default or undue influence, particulars of the wrong, with dates and items if necessary, must be stated insofar as practicable." "Malice, intent, knowledge, and other condition of mind of a person may be alleged generally." State, Dep't of Treasury, of Inv.ex rel. McCormac v. Qwest Commc'ns Int'l, Inc., 387 N.J. Super. 469, 484 (App. Div. 2006); see also Hoffman v. Hampshire Labs, Inc., 405 N.J. Super. 105, 112 (App. Div. 2009) ("[b]ecause a claim under the CFA is essentially a fraud claim, the rule requires that such claims be pled with specificity to the extent practicable").

We are satisfied the court did not err in dismissing Bada's CFA claim on a without prejudice basis. Bada asserted only conclusory statements insufficient to establish it was the victim of illegal, unfair, or deceptive business practices sufficient to withstand a <u>Rule</u> 4:6-2(e) motion. As noted, in its complaint, Bada asserted Advanced's "unconscionable business practice" included "holding itself out to be an alarm monitoring company, but fail[ing] to properly discharge its role." It did not, however, explain with necessary particularity how Advanced's purported failure to "discharge its role" constitutes unlawful conduct under the CFA or how such conduct caused an ascertainable loss.

Additionally, Bada's assertion paragraphs three through sixteen of its complaint sufficiently describe the factual bases for its CFA claim is unpersuasive as those paragraphs merely consist of background information and similar conclusory assertions that Advanced's faulty fire alarm negatively impacted the business. Bada alleged Advanced sold "obviously defective product[s] and service[s]" but did not further explain how the purportedly defective system was the result of Advanced's unlawful acts or how those unidentified acts specifically resulted in damage to its business.

It further claimed Advanced recommended upgrades to the system, which failed to rectify the false alarm issue, but likewise did not identify which

upgrades were implemented, when such upgrades occurred, or how Advanced's actions in connection with the purported upgrades constituted unlawful conduct under N.J.S.A. 56:8-2. The complaint was thus devoid of "particulars of the wrong" as required by Rule 4:5-8(a) and, therefore, failed to satisfy that heightened pleading standard. Much like the plaintiff in Hoffman, Bada's allegations under the CFA were "merely statements of a legal conclusion . . . [as it] did not plead specific facts that would allow a fact-finder to draw that conclusion." 405 N.J. Super. at 114.

Our analysis is not complete, however. Indeed, despite dismissing the matter without prejudice, Bada never filed an amended pleading addressing the court's well-founded concerns regarding the CFA claim, and we cannot discern from the record if Bada's inaction reflected its abandonment of the claim nor can we address the viability of any revised CFA claim without an amended pleading, and necessary factual findings and legal conclusions in the event there is a challenge to the sufficiency of that pleading.

Accordingly, on remand, Bada shall clearly and unequivocally inform the court if it intends to assert a CFA claim. If it does, it shall file an amended pleading within a time period prescribed by the court. The parties can address the propriety of any amended complaint as appropriate. Nothing in our opinion

should be construed as a reflection of our views on the merits of any proposed amended complaint.

## III.

We next address Bada's contention the court incorrectly dismissed its implied duty of good faith and fair dealing claim. Bada maintains the "dismissal was contradictory to the retention of the contract claim," and further asserts the court improperly resolved disputed genuine and factual questions that "[d]espite repeated . . . false alarm triggers, [Advanced] . . . claimed [the system] . . . had been properly repaired and that it is functioning properly, which [was] clearly false." We are unpersuaded by these arguments.

We review the disposition of a summary judgment motion de novo, applying the same standard used by the motion judge. Townsend v. Pierre, 221 N.J. 36, 59 (2015). Like the motion judge, we view "the competent evidential materials presented . . . in the light most favorable to the non-moving party, [and determine whether they] are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Town of Kearny v. Brandt, 214 N.J. 76, 91 (2013) (quoting Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995)); see also R. 4:46-2(c). If "the evidence 'is so one-sided that one party must prevail as a matter of law,'" courts will "not

16

hesitate to grant summary judgment." Brill, 142 N.J. at 540 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

"Every party to a contract . . . is bound by a duty of good faith and fair dealing in both the performance and enforcement of the contract." Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs., 182 N.J. 210, 224 (2005). The covenant of good faith and fair dealing "mandates that 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Seidenberg v. Summit Bank, 348 N.J. Super. 243, 253 (App. Div. 2002) (quoting Sons of Thunder v. Borden, Inc., 148 N.J. 396, 420 (1997)).

"Proof of 'bad motive or intention' is vital to an action for breach of the covenant." Brunswick Hills, 182 N.J. at 225 (quoting Wilson v. Amerada Hess Corp., 168 N.J. 236, 251 (2001)). The party alleging a breach of the covenant "must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." Ibid. (internal citations omitted).

After reviewing the record against the above-cited legal principles, we are convinced the court correctly granted summary judgment with respect to Bada's

breach of the implied contract of good faith and fair dealing claim because the competent proofs failed to raise a genuine and material dispute of fact supporting Bada's contention that Advanced's actions were animated by a bad motive or that it acted in bad faith to deny Bada the benefit of the bargain originally contemplated by the parties. Instead, Bada asserted only that frequent false alarms continued despite paying for repairs and ongoing service. "Without bad motive or intention, discretionary decisions that happen to result in economic disadvantage to the other party are of no legal significance." Wilson, 168 N.J. at 251. As such, Bada was required to prove that Advanced acted with bad faith and deprived plaintiffs of rights or benefits under the contract. Stated differently, Bada was required to submit competent proofs creating a genuine and material factual dispute that Advanced destroyed its "reasonable expectations and right to receive the fruits of the contract." Sons of Thunder, 148 N.J. at 420. Bada failed to meet this burden.

IV.

With respect to the dismissal of its breach of contract claim, Bada contends the court erred in changing course and dismissing its claim on reconsideration. It argues because of the "unrepaired fire alarm triggers that were being actively experienced by [Bada] . . . the denial of summary judgment

18

was clearly warranted." It further contends the "mere fact that the Fire Department was not dispatched in every instance does not show that the restaurant was not disrupted since fire alarm triggers within the restaurant necessarily create havoc." Thus, "[b]ecause [Advanced]'s motion sought to ignore [Bada]'s proofs, the [court] correctly decided against [Advanced]" with respect to count two.

Bada also maintains the court should have denied the motion as untimely because "Rule 4:49-2 requires any reconsideration motion be filed within [twenty] days of [the] order." It asserts Advanced filed its motion for reconsideration thirty-four days after the court granted partial summary judgment, and, therefore, it "was unreasonable and unfair to [Bada] because [Advanced], represented by a big law firm, with unlimited resources to make motion after motion seeking dismissal after dismissal, received special treatment." Additionally, Bada argues the court should have denied reconsideration because deciding the motion without oral argument was "unfair and [it was] unsupported by anything other than [Advanced]'s own, unilateral papers."

We review a trial judge's decision on whether to grant or deny a motion for rehearing or reconsideration for an abuse of discretion. JPC Merger Sub

LLC v. Tricon Enters., Inc., 474 N.J. Super. 145, 160 (App. Div. 2022) (citing Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)).  "Where the order sought to be reconsidered is interlocutory, as was in this case, Rule 4:42-2, governs the motion."  Ibid.  Under Rule 4:42-2, "interlocutory orders 'shall be subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice.'" Lawson v. Dewar, 468 N.J. Super. 128, 134 (App. Div. 2021).

Bada's first procedural argument is unpersuasive.  Rule 4:49-2 requires a party seeking reconsideration of a "judgment or final order" to file its motion within twenty days of the service of that final judgment or order.  The summary judgment order was clearly interlocutory as it did not dispose of all claims against all parties.  See Janicky, 396 N.J. Super. at 549-552.  Therefore, under Rule 4:42-2, the interlocutory summary judgment order was "subject to revision at any time before the entry of final judgment in the sound discretion of the court in the interest of justice."  Lawson, 468 N.J. Super. at 134.

As noted, Bada also argues the court erred in granting reconsideration without oral argument.  Under Rule 1:6-2(d), "no motion shall be listed for oral argument unless a party requests oral argument in the moving papers or in timely-filed answering or reply papers, or unless the court directs."  Although

20

there is some dispute whether Bada requested oral argument, Advanced did so in its notice of motion in which it sought reconsideration.

On an opposed civil motion that is not a pre-trial discovery motion or directly addressed to the calendar, oral argument must be granted as of right. R. 1:6-2(d). Notwithstanding Rule 1:6-2(d), a trial court can dispense with a request for oral argument if the record sets forth "special or unusual circumstance[s.]" Filippone v. Lee, 304 N.J. Super. 301, 306 (App. Div. 1997).

With respect to the substance of the court's reconsideration order, as noted, the record before us reveals the court provided limited insight into its reasoning for vacating its earlier denial, and subsequent award, of summary judgment on Bada's breach of contract claim. As best we can discern, the court's entire analysis is found at bottom of the March 11, 2024 order, in which it merely included a statement noting Bada's untimely opposition, its citation to the incorrect court Rule, and failure to oppose substantively the reconsideration application.

Our ability to resolve an appeal is largely dependent on the trial court's compliance with its Rule 1:7-4 obligation to "'state clearly [its] factual findings and correlate them with relevant legal conclusions, so that parties and the appellate courts [are] informed of the rationale underlying th[ose]

conclusion[s].'" Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 594-95 (App. Div. 2016) (alterations in original) (quoting Monte v. Monte, 212 N.J. Super. 557, 565 (App. Div. 1986)); Curtis v. Finneran, 83 N.J. 563, 570 (1980) ("Naked conclusions do not satisfy the purpose of [Rule] 1:7-4."). Without a clear statement of reasons, "we are left to conjecture as to what the judge may have had in mind." Salch v. Salch, 240 N.J. Super. 441, 443 (App. Div. 1990).

These principles are particularly applicable here, as we cannot discern from the court's brief notation on the order, the substantive bases for its decision to dismiss the breach of contract claim, particularly considering the court's previous denial of that claim under Rules 4:6-2(e) and 4:46-2. We are therefore convinced further illumination by the court is necessary. Accordingly, on remand, the trial court shall hear oral argument, or state its reasons for rejecting the request, and decide the motion anew, issuing either a written or oral statement of reasons "stat[ing] clearly [its] factual findings and correlat[ing] them with relevant legal conclusions." Avelino-Catabran, 445 N.J. Super. at 594-95 (quoting Monte, 212 N.J. Super. at 565).

To the extent we have not specifically addressed any of the parties' arguments, it is because we have concluded they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part and remanded in part. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2555-23